Argued and submitted June 21, decision of Court of Appeals reversed;
order of Oregon Department of State Police reversed July 21, 2005

## MARSHALL'S TOWING
### and Marshall Jennings,
*Petitioners on Review,*

*v.*

## DEPARTMENT OF STATE POLICE,
*Respondent on Review.*

## (DSP 3011, 3018, 3058; CA A122558; SC S51803)

116 P3d 873

Charles F. Lee, of Lee & Kaser, P.C., Roseburg, argued the cause and filed the brief for petitioners on review.

Erin C. Lagesen, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

GILLETTE, J.

**GILLETTE, J.**

In this administrative law case, petitioners Marshall's Towing and Marshall Jennings[1] seek review of a Court of Appeals decision that affirmed without opinion a final order of the Department of State Police (OSP). That final order debarred Marshall's Towing from participating for ten years in a pool of tow truck operators who share in the towing business generated by certain OSP activity. Petitioners assert that the OSP final order incorrectly construes and applies certain OSP administrative rules and that, when those rules are correctly construed and applied, Marshall's Towing has not violated any of them. For the reasons that follow, we agree with petitioners. We therefore reverse the contrary decision of the Court of Appeals.

Petitioner Marshall Jennings operates petitioner Marshall's Towing, a tow truck business. Marshall's Towing has locations in Roseburg, Sutherlin, and Winston, and it competes with other tow truck companies in those areas. A desirable part of a tow truck company's business is "nonpreference towing," a process in which OSP calls a company from a rotating list of towing companies to tow a vehicle when the vehicle's driver or owner does not choose a particular company. Removal generally involves abandoned vehicles, vehicles involved in accidents, or vehicles involved in crimes.

Marshall's Towing applied for and received appointments for all three business locations to the nonpreference rotation tow list maintained by OSP. The application forms, signed by Marshall Jennings on behalf of Marshall's Towing, indicated that each of the locations, including the Winston location, complied with all applicable statutes and administrative rules.

Marshall's Towing leases space for the Winston location from the owners of a gas station, Herrington Oil. Marshall's Towing used two service bays that are attached to

---

[1] The record and the parties often refer to Marshall Jennings and Marshall's Towing as if those were different names for a single entity. Testimony, however, indicates that Marshall Jennings is only part owner of Marshall's Towing. Throughout the opinion, we distinguish the two insofar as the ambiguous record permits.

the gas station office. Outside the building, a fenced-off area displayed a "Marshall's Towing" sign and the towing company telephone number. Employees of Herrington Oil had access to the service bays. At one point, an employee of Herrington Oil also had a key to the fenced area, and used the key on at least one occasion to admit a police officer who wished to inspect a vehicle.

In May 2001, an OSP dispatcher contacted the Marshall's Towing dispatcher to arrange for three tow trucks to "clear" a three-vehicle accident that had occurred in the Winston tow zone. Marshall's Towing responded with two tow trucks registered in the Winston zone, but it also brought in a third truck from Roseburg. There is a dispute in the record as to whether OSP authorized use of the out-of-zone truck, but the evidence was such that a factfinder could conclude (as the hearings officer in this case did) that OSP had not authorized use of the Roseburg truck specifically.

OSP initiated the present case by sending petitioners a notice of intent to revoke Marshall's Towing's three letters of appointment. The notice alleged that petitioners were guilty of 11 different violations of the rules and statutes relating to the towing business. Marshall's Towing denied those allegations, and the matter proceeded to a contested case hearing. At the close of the hearing, the hearings officer issued a proposed order that found that OSP had established three of the allegations, but not the remaining eight. Specifically, the hearings officer found: (1) that Marshall's Towing violated OAR 257-050-0140(20)[2] because Marshall's Towing did not have exclusive control over the storage area used at the Winston location; (2) that Marshall's Towing violated OAR 257-050-0100(2)[3] by responding to an accident with a tow truck that was not authorized to operate in the zone in

---

[2] OAR 257-050-0140(20) provides:

"All storage areas [of a tow truck operator approved to participate in non-preference towing] shall be under the operator's exclusive control and cannot be shared with other tow companies."

[3] OAR 257-050-0100(2) provides:

"A letter of appointment will be valid only in the zone or zones assigned by the station commander. Applications for additional letters of appointment in other zones must be based on a complete and separate business location capable of independent operation within the additional zone."

which the accident occurred; and (3) that Marshall's Towing violated ORS 162.085[4] by certifying on the application for the Winston location that Marshall's Towing had exclusive access to the premises. Marshall's Towing filed exceptions to the hearing officer's proposed order. OSP rejected the exceptions and adopted and incorporated the proposed order as its final order. By that final order, OSP revoked Marshall's Towing's three letters of appointment for a period of ten years.

Petitioners sought judicial review of the OSP final order in the Court of Appeals, which affirmed the order without opinion. *Marshall's Towing v. Department of State Police*, 194 Or App 726, 99 P3d 1237 (2004). We allowed petitioners' petition for review.[5]

---

[4] ORS 162.085(1) provides:

"A person commits the crime of unsworn falsification if the person knowingly makes any false written statement to a public servant in connection with an application for any benefit."

Violation of ORS 162.085(1) is a Class B misdemeanor. ORS 162.085(2).

[5] We offer the following observations to assist (and encourage) OSP in observing its own rules:

(1) The "final order" of OSP is signed by an OSP lieutenant who is described in the order as being the "Interim Director" of OSP's Patrol Services Division. We note in passing that we have been unable to find any statutory authority for anyone except the Superintendent to issue final orders of the Department of State Police. (In fact, there is no specific statutory authority even for the Superintendent to issue such orders, but we think that it necessarily must be implied.)

(2) The foregoing concern notwithstanding, there is a provision in OAR 257-050-0110(1) directing (and, by inference, authorizing) the Patrol Services Division to suspend or revoke a letter of appointment in certain specified circumstances. The question whether the Superintendent lawfully may delegate such authority has not been raised by any party, but the lack of statutory authority to that effect is a concern. The concern is made more palpable by the existence elsewhere (in ORS 183.325) of specific statutory authority for persons such as the Superintendent to delegate *rule-making* authority.

(3) According to OSP's own rules, the decision of the hearings officer is final. No further review, either by the Superintendent or by the person in charge of the Patrol Services Division, is contemplated by the rules themselves. OAR 257-050-0130 provides:

"The person aggrieved by the decision of the Hearings Program officer denying, suspending, or revoking a letter of appointment must make any further appeal of such decision to the Oregon Court of Appeals."

That is, the rules themselves appear to deny persons such as petitioners any possibility of seeking a further administrative remedy before invoking the jurisdiction of the Court of Appeals.

We offer the foregoing observations as a general admonition (applicable to all administrative agencies, not just OSP) that administrative rules, once made, must

Because the Court of Appeals did not issue an opinion, we are uncertain as to that court's rationale for affirming OSP's final order. The parties treat the case as presenting a conflict between the approaches to agency rule-making found in two decisions of this court, *Megdal v. Board of Dental Examiners*, 288 Or 293, 605 P2d 273 (1980), and *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 881 P2d 119 (1994). Even if such a conflict exists—an issue that we do not decide—we believe that this case can (and should) be resolved along conventional lines: Could OSP find that Marshall's Towing's various activities violate applicable rules and statutes as OSP had alleged? We proceed to that inquiry.

We begin with a summary of the law relating to non-preference towing, which we believe provides useful context for the discussion that follows.[6]

"Non-preference" towing refers to situations in which police call a tow truck to tow a vehicle, but the driver or other person in charge of the vehicle does not or cannot specify the towing company that he or she would prefer to use. The legislature has delegated to OSP, and, more specifically, to the Superintendent of State Police, the power to adopt rules governing nonpreference towing. ORS 181.440 provides:

"The Superintendent of State Police may make rules governing the eligibility of towing businesses to be placed and remain on any list of such businesses used by the Department of State Police when it requests towing services on behalf of any person."

Pursuant to that authorization, the Superintendent has adopted OAR chapter 257, division 50. OAR 257-050-0040. Under those rules, OSP has created a "non-preference list," which the rules define as

"[t]he list of authorized tow operators maintained at the Oregon State Police headquarters that is used to dispatch

be followed, in order for the public to have a reliable road map as to the actions that its government claims to be entitled to take.

[6] The following description of the legal context for regulation of the nonpreference towing business is derived in the main from the able summary presented in the brief of OSP.

the tow operators on an equitable basis when no choice or preference to a towing company is stated by the vehicle owner, operator, or other person responsible for the vehicle."

OAR 257-050-0050(13).

To be placed on the nonpreference list, a tow operator must apply for a letter of appointment (sometimes called in the rules a "certificate" of appointment) using an application form provided by OSP. OAR 257-050-0060; OAR 257-050-0070. A tow operator may obtain a letter of appointment for a particular place of business only if "[t]he applicant has an established place of business at the address shown." OAR 257-050-0070(1). Additionally, a tow operator that maintains multiple places of business must obtain a separate letter of appointment for each place of business. OAR 257-050-0100(6). Moreover, "[a] letter of appointment will be valid only in the zone or zones assigned by the station commander." OAR 257-050-0100(2).

A towing business seeking to receive or renew a letter of appointment for a particular place of business must demonstrate that the place of business, the business records, and the tow vehicles operating from that place of business meet the standards outlined in the administrative rules. OAR 257-050-0090. Specifically,

"[w]ithin 30 days of the receipt of a request for an application for a letter of appointment, the Patrol Services Division [of OSP] shall send an application packet to include a current copy of these OAR's, and all forms related to self certification, inspection and certification of equipment and other related information required by these OAR's. The applicant shall self certify under penalty of suspension and/ or revocation from the non-preference tow rotation that they (their towing business, vehicles and operators) meet the minimum requirements as required by these OAR's."

*Id.*

Under the rules, a participating tow truck operator must conduct the self-certification/inspection of the business, associated trucks, and employees at least yearly. OAR 257-050-0090(1). A place of business cannot receive a letter of

appointment unless it has at least one tow truck. OAR 257-050-0100(9). Additionally, a place of business operating under a letter of appointment must notify OSP whenever it acquires or loses a tow truck. OAR 257-050-0090(6) and (7). A place of business also must notify OSP if one of its tow trucks is not working. OAR 257-050-0090(2) and (3).

■ OAR 257-050-0140 establishes standards governing the operation of places of business and maintenance of business records. As relevant to this judicial review proceeding, OAR 257-050-0140(20) provides that "[a]ll storage areas shall be under the operator's exclusive control and cannot be shared with other tow companies." Finally, OAR 257-050-0050(24) defines "vehicle storage area" as:

> "[T]he approved yard or enclosed building where stored vehicles are kept. The storage area and fencing will comply with requirements as established by this rule and all local zoning rules and regulations. This storage area will be under the exclusive access and control of the individual towing service and be separate for each place of business."

We turn from the foregoing general description of the statutory and administrative rule framework regulating the nonpreference towing business to the specifics of Marshall's Towing's alleged violations of that regime. Two of the three alleged violations involve the same issue: namely, whether Marshall's Towing maintained "exclusive" control over the Winston facility, as petitioners had asserted in the application. One of the allegations was that Marshall's Towing did not, in fact, have such exclusive control. The second was that Marshall's Towing falsely asserted in the application for approval of the Winston location that Marshall's Towing had such control over the Winston premises. Obviously, the correctness of the latter allegation depends on the correctness of the former: If Marshall's Towing was in exclusive control of the Winston premises, then it cannot have been guilty of falsely asserting that such was the case.[7]

---

[7] Indeed, this "doubling up" of violations, based on a single fact, presents its own analytical difficulties: Does the fact that Marshall's Towing, at some time after receiving the letter of appointment for the Winston location, allowed a Herrington employee to have a key to the Winston premises establish that any such person had such a key at the time that petitioners made the application? And, even if such a fact may be inferred, may Marshall's Towing be punished both for that

As noted, the requirement of exclusive control of business premises is found in OAR 257-050-0140(20), which provides:

> "All storage areas [of a tow truck operator approved to participate in non-preference towing] shall be under the operator's exclusive control and cannot be shared with other tow companies."

Petitioners assert, in essence, that a reasonable person reading the foregoing rule would not understand that the rule prohibited the conduct, which now serves as the factual basis for the agency's finding of a violation.[8] OSP responds that (1) the agency reads the "exclusive control" requirement rule to forbid allowing someone other than an operator's employee to have a key to a storage area, (2) such a reading is "plausible," and (3) because such a reading is plausible, our inquiry should be at an end. In so arguing, OSP relies on this court's rationale in *Don't Waste Oregon*.

■■ This court's task in interpreting an administrative rule is to " 'ascertain the intent of the body that promulgated [the rule].' " *SAIF v. Kurcin*, 334 Or 399, 406, 50 P3d 1167 (2002) (citing *Osborn v. PSRB*, 325 Or 135, 145, 934 P2d 391 (1997)). To carry out that task, we begin by examining the text and context of the rule in question. *Id.*

The first thing that becomes clear from reading the text of the rule is that its exclusivity provision applies only to "storage areas." The rules contain no separate definition of "storage area." Contextually, however, it is clear that the reference in fact is more specifically to *vehicle* storage areas. OAR 257-050-0050(24) provides that a "vehicle storage area"

---

circumstance and the fact that it was misstated? In the hearings officer's order, a similar "doubling up" of violations with respect to other administrative rules was rejected as being impermissible, but the hearings officer did not note the same problem here. We are not called upon in this case to resolve the problem, both because petitioners did not raise it either before OSP or the Court of Appeals, and also because we decide the case on other grounds favorable to petitioners.

[8] We say "in essence" because petitioners' argument is, more generally, that a reasonable person in petitioners' position would not have understood the rule as OSP now interprets it, without some further and authoritative explication by the agency of that interpretation. We think, however, that the more fundamental proposition—that the rule cannot be read as the agency reads it at all—necessarily is subsumed in the argument that petitioners present.

is "the approved yard or enclosed building where stored vehicles are kept." No other rule uses the term "storage area" in a contrary sense. Thus, the scope of the rule that Marshall's Towing allegedly violated does not extend to offices or other parts of business premises not used for storing vehicles.[9]

Beyond that, however, the intended function of the rule is something of a mystery. As noted, the full text of the rule states that "[a]ll storage areas shall be under the operator's exclusive control *and cannot be shared with other tow companies.*" (Emphasis added.) Reading the words of the rule *in pari materia*, the scope of the rule appears to be limited to the concern identified by the emphasized part of the rule, *i.e.*, a concern that towing companies not share a common vehicle storage area. That would be the most natural and ordinary reading of this specific rule, and would wholly eliminate the rationale offered by OSP—*viz.*, that Herrington Oil personnel had a key to the vehicle storage area at one time—for finding that Marshall's Towing violated it.

The foregoing discussion demonstrates the difficulty in reading the rule as broadly as OSP reads it. Moreover, OSP's version of the meaning of the exclusivity requirement is inherently illogical. It is a verity, for example, that some vehicle storage areas will be rented, not owned. Yet, according to OSP, an operator must be able to state categorically that no one—even including representatives of the landlord—will, under any circumstances, be allowed into the vehicle storage area. Just how a lessee legally could assure such a degree of exclusivity escapes us, especially given the usual relationship between landlord and tenant, and OSP

---

[9] Such a reading is consistent with the wording of OAR 257-050-0040(16) and OAR 257-050-0070(2). OAR 257-050-0040(16) provides:

" 'Place of Business'—Means a building which the registered tow truck operator occupies either continuously or at regular times, where tow business books and records are kept and tow business is transacted in each assigned tow zone. Businesses operating on the same business lot shall maintain individual and separate records, *storage facilities*, and letters of appointment for operating authority."

(Emphasis added.) OAR 257-050-0070(2) provides that the application form for a letter of appointment to the nonpreference towing list shall establish that the applicant's "[p]lace of business has an office area that is accessible to the public *without entering the storage area.*" (Emphasis added.)

offers *no insight into the problem.* Other plausible contingencies—for example, entrusting a key to a representative of the landlord, in case a tow truck operator arrives at a storage area and cannot find his key, or cases like the one described in this proceeding, in which a representative of the landlord was in possession of a key and was able to use it to assist a police investigation—come to mind, but cannot be accommodated by the OSP construction of the rule.

In sum, we hold that OAR 257-050-0140(20) cannot be read in the way that OSP reads it. Even if we do not read the exclusivity requirement in the most natural way, *i.e.*, as a requirement concerned only with sharing premises with other tow truck operations, the words of the rule cannot sustain the extensive scope that OSP claims for it. It follows that Marshall's Towing cannot have violated the rule, as we read it, and that OSP's contrary finding cannot stand. It further follows that OSP's finding that Marshall's Towing violated the related criminal statute also cannot stand.

■     This brings us to Marshall's Towing's alleged violation of OAR 257-050-0100(2). As noted, that rule provides:

> "A letter of appointment will be valid only in the zone or zones assigned by the station commander. Applications for additional letters of appointment in other zones must be based on a complete and separate business location capable of independent operation within the additional zone."

As explained elsewhere, Marshall's Towing's alleged violation of this rule arose out of its choice to send a tow truck ordinarily assigned to or located at its place of business in another zone to tow one of three vehicles disabled in the Winston operating zone.

There is an obvious difficulty with OSP's application of OAR 257-050-0100(2) to the conduct here: The rule nowhere purports to confine *trucks* (as opposed to operators) to a particular zone. Neither OAR 257-050-0100(2) nor, so far as our review of division 50 of OAR chapter 257 discloses, any other rule denies an operator who is authorized to operate in several zones the right to shift trucks from one zone to another. As OAR 257-050-0100(10) makes clear, "The letter of appointment shall state the zone [that] *the businesses* are

authorized to operate in." (Emphasis added.) However, there is no similar provision indicating that the letter of appointment (or any other document) shall state (and thereby legally limit) the zone in which tow trucks belonging to the operator shall be permitted to operate.[10]

Read interstitially, the OSP order (and some of the testimony at the hearing) appears to assume that the nonpreference regime includes a limit on the ability of an operator to shift trucks from one operating zone to another, either as a simple administrative choice or in response to a request for towing services. Moreover, OSP doubtless is correct that, in some circumstances, the use of an out-of-zone truck might result in an avoidable delay in reaching a vehicle that needs towing. However, the practice of limiting a truck to operating only in the zone to which that truck is assigned, if such a practice exists, never has found its way into the rules and, because it has not, failure to abide by such a practice cannot serve as a basis for suspending or revoking a letter of appointment. OSP's finding that Marshall's Towing was guilty of violating OAR 257-050-0100(2) thus cannot stand.

Under the foregoing analysis, OSP has failed to justify legally any of the findings of violation at issue. It follows that the final order of OSP is contrary to law, and must be set aside. ORS 183.482(8)(a)(A).

The decision of the Court of Appeals is reversed. The order of the Oregon Department of State Police is reversed.

---

[10] There are, to be sure, several provisions relating to the *inspection* of individual tow trucks, some of which provisions also make reference to the nonpreference tow list. Thus, OAR 257-050-0090(2)(b) speaks of "remov[ing]" a tow truck that is defective in some non-safety-related way "from the Oregon State Police nonpreference list." Similarly, OAR 257-050-0090(3)(a) directs that any tow truck that has safety-related defects "shall be suspended from the use [*sic*] of the Department non-preference list." Related subsection (3)(b) permits a tow company to "voluntarily remove the involved vehicle from the Oregon State Police non-preference list." Vehicles removed from the list may be "reinstate[d]." OAR 257-050-0090(4). Operators are required to notify OSP if a tow truck is sold, "so that the truck may be dropped from the non-preference list." OAR 257-050-0090(6). However, none of those sections (or any other that we have found in division 50 of OAR chapter 257) confines trucks, as such, to any particular zone.