Argued and submitted January 15, 2016, reversed and remanded
February 15, 2017

Khrizma KUHN,
acting by and through
Renee Kuhn and Gary Kuhn,
Legal Guardians,
*Petitioner,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*

Office of Administrative Hearings
20140643; A157445

389 P3d 1167

Margaret H. Leek Leiberan argued the cause for petitioner. With her on the briefs was Jensen & Leiberan.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**LAGESEN, J.**

This case is before us on a petition for review of a final order of the Department of Human Services (DHS). ORS 411.095(6); ORS 183.482. The order on review, which was issued by an administrative law judge (ALJ) of the Office of Administrative Hearings (OAH), upheld DHS's reduction of transportation service benefits provided to petitioner, a developmentally disabled adult woman, under *former* OAR chapter 411, division 330 ("Comprehensive In-Home Support for Adults with Intellectual or Developmental Disabilities").[1] The primary issue presented is whether, in concluding that petitioner's transportation services benefits should be reduced, the ALJ erroneously interpreted DHS's "social benefit" rule, OAR 411-330-0020(81), to prohibit the expenditure of funds for transportation that also benefits petitioner's friends or family members. We conclude that the ALJ erroneously interpreted the rule in reaching his decision and reverse and remand for reconsideration.

The parties dispute the extent to which in-home support (IHS) funds may be used to pay for mileage for trips made to visit petitioner's family and friends. Under the rules, eligible individuals may receive IHS funds for those services authorized in their individual support plans (ISPs), if certain conditions are met.[2] *See* OAR 411-330-0060(1). Among other things, a service must constitute a "social benefit" to qualify for payment with IHS funds. OAR 411-330-0060(2) ("Goods and services purchased with IHS funds must be provided only as a social benefit as defined in OAR 411-330-0020."). A "social benefit" is "a service or financial assistance solely intended to assist an individual with an intellectual or developmental disability to function in society on a level

---

[1] DHS amended division 330 of OAR chapter 411 after the final order in this case was issued. All citations are to the administrative rules in effect from December 28, 2013 to June 30, 2014.

[2] Regarding individual support plans, OAR 411-330-0020(48) explains:

"'Individual Support Plan' means the written details of the supports, activities, and resources required for an individual to achieve and maintain personal outcomes. * * * The manner in which services are delivered, service providers, and the frequency of services are reflected in an ISP. The ISP * * * reflects whether services are provided through a waiver, state plan, or natural supports."

comparable to that of a person who does not have an intellectual or developmental disability." OAR 411-330-0020(81).

Community transportation services, which are transportation services "that enable an individual to gain access to community services, activities, and resources that are not medical in nature," are among the services that an ISP may authorize. OAR 411-330-0020(19). Community transportation services may include "[r]eimbursement on a per-mile basis for transporting an individual to accomplish an ISP goal related task." OAR 411-330-0110(6)(a)(B). If such transportation services otherwise meet the definition of a "social benefit"—that is, are "solely intended" to assist a disabled individual to function in society comparably to a nondisabled individual—then IHS funds can be used to pay for them. OAR 411-330-0060(2). As DHS's expenditure guidelines elaborate,

> "Trips must be related to recipient service plan needs and goals, are not for the benefit of others in the household, and are provided in the most cost effective manner that will meet needs specified on the plan. Community Transportation services are not used to:
>
> "1) Replace voluntary natural supports, volunteer transportation, and other transportation services available to the individual;
>
> "2) Compensate the service provider for travel to or from the service provider's home.
>
> "Mileage reimbursement may only be applied when the individual is in the vehicle with the provider."

"Natural supports," referenced in the guidelines, are defined as "the voluntary resources available to an individual from the individual's relatives, friends, significant others, neighbors, roommates, and the community that are not paid for by the Department." OAR 411-330-0020(59).

Petitioner is developmentally disabled and receives IHS funds in accordance with an ISP. She lives with her parents, who are her designated care providers. Starting in September 2013, petitioner's ISP authorized reimbursement for up to 779 miles per month for "transportation by her providers to access places and activities in the community."

Petitioner's ISP further indicated that petitioner's providers "will be responsible for offering [petitioner] opportunities for recreation and community integration so that she enjoys a unique and full life." The ISP required petitioner to maintain a monthly mileage log and to submit that log to DHS each month in order to obtain reimbursement.

In early 2014, petitioner's caseworker reviewed the monthly mileage logs submitted by petitioner's parents from September through January. She determined that some of the trips, such as running errands or visiting petitioner's family, did not appear to be for petitioner's benefit and would likely have occurred with or without petitioner's presence. The caseworker reviewed DHS policy and consulted her supervisor, and then prospectively reduced petitioner's mileage benefit to the average number of "allowable" miles in each month's log.[3] Petitioner's new ISP, dated February 24, 2014, reflected the new allowance of up to 360 miles per month, or $174.60, for the purpose of "visiting with friends, shopping, and seeing sights in the community."

DHS notified petitioner of the planned reduction in her mileage benefits and her right to request a hearing on that reduction. Petitioner requested a hearing and DHS referred the case to OAH. At the hearing, petitioner, who was represented by her mother, took the position that all of the trips that were reflected on the mileage logs qualified for reimbursement and that, as a result, DHS erroneously reduced the mileage benefit. DHS took the position that the trips on which the mileage reduction was predicated did not qualify as social benefits under OAR 411-330-0020(81) because some were for the benefit of petitioner's family as well as for petitioner, and because some appeared to be trips that would have been provided to petitioner anyway as a matter of natural support by her family. The parties also disputed the extent to which certain trips were in furtherance of an ISP goal.

The ALJ upheld the reduction in mileage benefit, but did so on a ground different from the one argued by DHS. He noted that, under OAR 411-330-0020(81), "if a service is

---

[3] Petitioner was not denied reimbursement for any of the claimed mileage.

not solely intended to assist the individual, it is not a social benefit." From that, he reasoned that *any* trip to visit friends or family cannot have been a social benefit "because [petitioner's parents], the friends and the other family members benefitted from the services as well." The ALJ based his entire determination on whether a trip was to visit family or friends. If the trip was to visit family and friends, the ALJ ruled that the trip was not a social benefit; the ALJ ruled that all other trips were reimbursable (with one exception for an excluded "vacation" expense, which petitioner does not challenge). He determined further that, in view of the trips that he had identified as nonreimbursable, DHS was justified in reducing petitioner's monthly mileage benefit from 779 miles to 360 miles.

On review, petitioner raises two assignments of error. In the first assignment of error, she contends that the ALJ erred in construing OAR 411-330-0020(81) to mean that any trip that benefitted someone other than petitioner does not constitute a social benefit under that rule, and, consequently, erred in determining that DHS justifiably reduced petitioner's mileage benefit. In the second assignment of error, petitioner asserts that the ALJ erred by not modifying petitioner's annual support plan to correct inaccuracies in that plan.

We start with the first assignment of error. We review the ALJ's interpretation of administrative rules for legal error. ORS 183.482(8)(a) ("If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular result, the court shall * * * [s]et aside or modify the order; or * * * [r]emand the case to the agency for further action under a correct interpretation of the provision of law."). Our task is to determine the intent of the promulgating agency by considering the text of the rule in context. *Marshall's Towing v. Department of State Police*, 339 Or 54, 62, 116 P3d 873 (2005).

As an initial matter, the parties dispute whether the ALJ's interpretation of OAR 411-330-0020(81) is one that is entitled to deference under *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119

(1994). We conclude that it is not. Although DHS argues that we should affirm the ALJ's order, there is no indication that DHS's interpretation of its rule is the same as the ALJ's. *Bianco v. DMV*, 257 Or App 446, 452 n 1, 307 P3d 470 (2013) (citing *OR-OSHA v. Don Whitaker Logging, Inc.*, 329 Or 256, 262 n 7, 985 P2d 1272 (1999)); *see Marshall's Towing*, 339 Or at 58 n 5 (declining to defer to interpretation of rule contained in order where, among other things, the interpretation did not appear to be one made by authorized agency personnel, and where, under agency rules, the hearings officer's order was not subject to further review by the agency). The ALJ's interpretation is not the one that DHS advocated at the hearing, and is not the one that DHS places on the rule in its brief to us. There also is no indication that DHS formally ratified the interpretation of the rule contained in the order. DHS did not require petitioner to file exceptions to the order with the agency before seeking judicial review, or employ any other process that would suggest that DHS interprets the rule the same way that the ALJ did. Under those circumstances, we are unable to conclude that the ALJ's interpretation of OAR 411-330-0020(81) represents DHS's interpretation and, for that reason, afford it no deference.

Turning to the correctness of the ALJ's interpretation, our analysis begins and ends with the text of the rule. As noted above, OAR 411-330-0020(81) defines a "social benefit" as follows:

> "'Social Benefit' means a service or financial assistance solely intended to assist an individual with an intellectual or developmental disability to function in society on a level comparable to that of a person who does not have an intellectual or developmental disability."

The ALJ interpreted the provision to demand that *only* the disabled individual benefit from a service for the service to qualify as a social benefit. That is, the ALJ determined that, to qualify as a social benefit, the sole effect of the service must have been to benefit the disabled person and no one else. However, that is not what the text of the rule states. That text focuses on the *purpose* of service rather than its *effects*, requiring that a service be solely *intended* to assist

the disabled individual—specifically, to assist the individual "to function in society on a level comparable to that of a person who does not have an intellectual or developmental disability." OAR 411-330-0020(81). Significantly, the rule does not contain the limitation that the ALJ apparently read into it—that services that have the ancillary effect of benefitting someone other than the disabled person are disqualified from being considered social benefits—and it is not our role to supply that limitation. *See Marshall's Towing*, 339 Or at 64-65 (declining to read into an administrative rule a limitation not included in the rule's text). Absent the inclusion of such a limitation, under the terms of the rule, a service that is provided with the sole objective of assisting the disabled person to function comparably to a nondisabled person necessarily qualifies as a social benefit even if someone else incidentally benefits from that service. DHS acknowledges as much in its brief: "That the trip may be of some *incidental* benefit to others does not mean that the transportation costs are ineligible for reimbursement—on the contrary, such trips will still be eligible for reimbursement as long as the sole reason for taking the trip in the first place was to benefit petitioner." (Emphasis in original.)[4]

Thus, whether services qualify as a social benefit under OAR 411-330-0020(81) turns on the intent with which the services were provided. The critical question is whether the services were solely intended to assist the disabled person to function in a way comparable to a nondisabled person, or were instead intended to serve other purposes as well. Because that is not the question that the ALJ asked in determining which of petitioner's trips qualified as social benefits, we must reverse and remand for reconsideration under a correct interpretation of OAR 411-330-0020(81). *See* ORS 183.482(8)(a)(B); *Vermeulen v. Dept. of Human Services*, 231 Or App 410, 419, 220 P3d 93 (2009) (remanding case to an ALJ for reconsideration under the correct interpretation of a DHS rule).[5]

___

[4] The DHS expenditure guidelines also echo this focus on the intended purpose, rather than the actual effects, of particular transportation services, specifying that "[t]rips must be related to recipient service plan needs and goals" and "not for the benefit of others in the household."

[5] Petitioner acknowledges that our conclusion that the ALJ relied on an erroneous interpretation of OAR 411-330-0020(81) "normally" would require a

We turn to the second assignment of error. In it, petitioner argues that the ALJ erred by not ordering DHS to correct certain perceived inaccuracies in petitioner's annual plan. Although petitioner expressed her dissatisfaction with the annual plan below, she did not clearly raise, and the ALJ did not address, the issue that she now raises. In addition, it is not readily apparent to us whether petitioner's challenge to the annual plan is within the scope of this proceeding. Because we have determined that remand is required on petitioner's first assignment of error, we leave it to the ALJ to address the questions raised by petitioner's second assignment of error in the first instance.

Reversed and remanded.

---

remand for the ALJ to apply the correct legal standard, but argues that, in this case, the "uniform evidence" establishes as a matter of law that the trips qualify as social benefits. We disagree. On this record, whether a particular trip was "solely intended" to benefit petitioner or was for other purposes as well is a question of fact to be resolved by the ALJ in the first instance.