## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CURTIS DWAYNE McCLURE,
*Defendant-Appellant.*

Multnomah County Circuit Court
090850307; A143705

300 P3d 210

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Edmonds, Senior Judge.

ORTEGA, P. J.

Sercombe, J., dissenting.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction for resisting arrest, ORS 162.315. On appeal, he assigns error to (1) the trial court's admission of "prior bad acts" evidence related to defendant's prior conviction for resisting arrest, and (2) the court's denial of his motion for judgment of acquittal. We reject defendant's first assignment of error without discussion. As to the second, defendant contends that the resisting arrest statute does not apply where, as here, a person resists being taken into custody for an alleged parole violation. We conclude that taking a person into custody for an alleged parole violation constitutes an "arrest" for purposes of the resisting arrest statute, ORS 162.315. Because there was evidence in this case from which a rational trier of fact could have found the essential elements of resisting arrest beyond a reasonable doubt, the trial court properly denied defendant's motion for judgment of acquittal. *See State v. Lupoli*, 348 Or 346, 366, 234 P3d 117 (2010). Accordingly, we affirm.

The few relevant facts are undisputed. While on routine patrol, Portland Police Officers Shaw and Reister contacted defendant on the street. Shaw asked for defendant's name; defendant answered, asked if he was under arrest, and, when told that he was not, kept walking. Shaw conducted a warrant check that revealed that defendant had an outstanding warrant for arrest. The officers again contacted defendant about one block from the original contact and informed him of the warrant. When the officers attempted to take defendant into custody, he resisted by tightening his arms and grabbing Shaw's finger. Shaw attempted a "hair hold takedown" to force defendant to the ground, but defendant, yelling and screaming, grabbed onto a light pole and refused to go to the ground. Defendant refused to comply with further instructions by the officers to "give me your hand" and "stop resisting." Eventually, the officers, with the assistance of a private security guard, were able to take defendant into custody. Defendant was subsequently charged with one count of resisting arrest, and a jury convicted him.

In order to address defendant's second assignment of error, we must determine whether taking a person into custody for a parole violation constitutes an arrest for purposes of the resisting arrest statute, ORS 162.315. Accordingly, we must engage in our usual mode of statutory construction, considering the text, context, and any useful legislative history of the disputed statute in order to discern what the legislature intended. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

We begin with the applicable statutes. ORS 162.315 provides, in part:

"(1)   A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

"(2)   As used in this section:

"(a)   'Arrest' has the meaning given that term in ORS 133.005 and includes, but is not limited to, the booking process.

"(b)   'Parole and probation officer' has the meaning given that term in ORS 181.610."

ORS 133.005 provides, in part, that,

"[a]s used in ORS 133.005 to 133.400 and 133.410 to 133.450, unless the context requires otherwise:

"(1)   'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense. * * *"

Defendant contends that he could not be convicted for resisting arrest under ORS 162.315 because that statute applies only when a person is taken into custody for purposes of charging that person with an "offense" and, according to defendant, a parole violation is not an "offense" within the meaning of the statute. In short, defendant relies on the definition of "offense" in ORS 161.505 to contend that an "offense" is either a "crime" as defined in ORS 161.515 or a "violation" as described in ORS 153.008. Defendant reasons that, because a parole violation is neither a crime nor a violation, it is not an offense under ORS 133.005(1) and, therefore, taking a person into custody for a parole violation

is not taking a person into custody "for the purpose of charging that person with an offense." Because the evidence at trial was that the officers were taking defendant into custody for a parole violation, defendant asserts that he was entitled to a judgment of acquittal.

The state does not argue that taking a person into custody under a warrant for a parole violation is an "arrest" as that term is defined in ORS 133.005(1); rather, it contends that the proper analysis of the resisting arrest statute in this case hinges on the phrase "unless the context requires otherwise" in ORS 133.005. That is, the state maintains that the operative context in this case (*i.e.*, an arrest under a warrant for a parole violation), when viewed in light of statutes that make taking a person into custody for a parole violation an arrest, compels the conclusion that the legislature intended an arrest for a parole violation to qualify as an "arrest" under ORS 162.315.

We agree with defendant that a parole violation is not an offense as the term is used in ORS 133.005(1). However, we conclude that the statutory text, when considered in context and in light of the applicable legislative history, indicates that the legislature intended an arrest by a peace officer or a parole and probation officer for a parole violation to qualify as an arrest under the resisting arrest statute. The "unless the context requires otherwise" provision in ORS 133.005 and the legislative history of House Bill (HB) 3379 (2005) guide our conclusion that, in this context, a departure from the standard definition of "arrest" in ORS 133.005(1) is required in order to avoid conflicting with the legislative intent. Our construction of the statute is also consistent with the legislative purpose of the resisting arrest statute to "reduce challenges to arrest under color of law because such challenges foster civil disorder and disrespect for the law." *State v. Brandon*, 35 Or App 661, 663, 582 P2d 52, *rev den*, 284 Or 235 (1978).

Under ORS 162.315(2)(a), "'[a]rrest' has the meaning given that term in ORS 133.005 and includes, but is not limited to, the booking process." Accordingly, we begin our analysis with the text of ORS 133.005. Again, that statute provides, in part, that,

"[a]s used in ORS 133.005 to 133.400 and 133.410 to 133.450, unless the context requires otherwise:

"(1) 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense. * * *"

The legislature's inclusion of the phrase "unless the context requires otherwise" in a statutory definition indicates that

"in some cases, the circumstances of a case may require the application of a modified definition of the pertinent statutory terms to carry out the legislature's intent regarding the statutory scheme. However, even when that phrase is present in a statutory definition, we follow our standard interpretative methodology—beginning with the statutory text and context. As part of that textual analysis, we consider whether, in light of the factual context and the entire statutory scheme, the use of a particular statutory definition would be inappropriate because the result would conflict with one or more aspects of the legislature's intent."

*Necanicum Investment Co. v. Employment Dept.*, 345 Or 138, 142-43, 190 P3d 368 (2008). Accordingly, we must consider whether, in light of the context presented in this case and the entire statutory scheme, the use of the definition of arrest in ORS 133.005(1) would conflict with one or more aspects of the legislature's intent. Ultimately, we conclude that it would.

The legislature made several changes to the statutory scheme in 2005, through the enactment of HB 3379, that are pertinent to our analysis of the statute at issue. Before we examine those changes, some background is necessary to set the context for that legislative action. Prior to the 2005 amendments, ORS 162.315 did not include any reference to parole and probation officers. Accordingly, groups acting on behalf of parole and probation officers introduced HB 3379. The bill's proponents indicated that they wanted to address separate issues.

First, they wanted to clarify that the crimes of resisting arrest, ORS 162.315, and interfering with a peace officer, ORS 162.247, applied to parole and probation officers when performing their official duties—that is, arresting the individuals under their supervision for parole violations.

Testimony, House Judiciary Committee, Subcommittee on Criminal Law, HB 3379, June 10, 2005, Ex C (statement of Mary Botkin, American Federation of State, County, and Municipal Employees). The proponents of the bill noted that some district attorneys would not charge resisting arrest when a parole or probation officer was involved because the statute only recognized the crime if committed against a "peace officer" and that parole and probation officers did not fall within the definition of "peace officer" in ORS 161.015. *Id.*

Second, the bill's proponents wanted to clarify and possibly expand the general arrest authority of parole and probation officers. Parole and probation officers were concerned that their authority to arrest an individual not under their supervision but subject to an arrest warrant was not clear and, separately, in conducting their duties, officers often encountered criminal conduct by individuals not under their supervisory authority, and they wanted authority to make an arrest in those circumstances. *Id.*

HB 3379, as introduced, proposed to address those concerns by amending the definition of "peace officer" in ORS 161.015(4) to include parole and probation officers. That proposal was opposed, in part, because of concerns about the potential consequences of expanding parole and probation officers' arrest authority to allow an officer to arrest outside the board's supervisory authority. In the end, the interested parties agreed to a compromise bill. That bill established a task force to explore expanding parole and probation officers' arrest authority to individuals not under supervision by the Department of Corrections. Or Laws 2005, ch 668, § 7. It also added "parole and probation officer" to ORS 162.315, amended ORS 133.220 to explicitly reference a parole and probation officer's authority to arrest under a warrant pursuant to section 6 of the act (codified at ORS 133.239), or without a warrant for parole violations, and created the provisions now found at ORS 133.239 that govern an arrest by a parole and probation officer under a warrant.[1] Or Laws 2005, ch 668, §§ 1-6.

---

[1] ORS 133.239 provides:

"(1) As used in this section, 'parole and probation officer' has the meaning given that term in ORS 181.610.

Ultimately, the legislature's changes to ORS 162.315 and ORS 133.220 altered the statutory scheme to clarify that taking a person into custody for a parole violation is an arrest for purposes of the resisting arrest statute.[2] Initially, the legislature added "parole and probation officer" to the resisting arrest statute, which is consistent with an intent to make the crime applicable when a parole and probation officer is taking a person into custody. The legislature's intent is particularly evident when the change to ORS 162.315 is considered in conjunction with the changes to ORS 133.220, which explicitly recognized that an arrest may be effected for parole violations. That statute states:

"An arrest may be effected by:

"(1)   A peace officer under a warrant;

"(2)   A peace officer without a warrant;

"(3) A parole and probation officer under a warrant as provided in ORS 133.239;

"(4) A parole and probation officer without a warrant for violations of conditions of probation, parole or post-prison supervision;

"(5) A private person; or

"(6) A federal officer."

ORS 133.220. In HB 3379, the legislature added what are now ORS 133.220(3) and (4). In subsection (4), the legislature

---

"(2) A parole and probation officer may arrest a person if the person is being supervised by the Department of Corrections or a county community corrections agency.

"(3)(a) A parole and probation officer making an arrest under this section shall, without unnecessary delay, take the arrested person before a magistrate or deliver the arrested person to a peace officer.

"(b) The parole and probation officer retains authority over the arrested person only until the person appears before a magistrate or until the law enforcement agency having general jurisdiction over the area in which the arrest took place assumes responsibility for the person."

[2] The legislative history indicates that the interested parties and members of the Senate Committee on Rules understood that the bill that passed out of committee before final passage took care of the proponents' first concern—that is, it clarified that the crimes of resisting arrest and interfering with a peace officer occur when a person resists a parole and probation officer who is taking a supervised person into custody under a warrant or without a warrant for parole violations. Tape Recording, Senate Committee on Rules, HB 3379, July 1, 2005, Tape 145, Side A, Tape 146, Side A (statement of Sen Charlie Ringo).

unambiguously recognized that an arrest may be effected for parole, probation, and post-prison supervision violations. When considered with the change to ORS 162.315 and the legislative history of HB 3379, it is evident that, in doing so, the legislature changed the statutory scheme to recognize that taking a person into custody for violating parole is an arrest for purposes of the resisting arrest statute.

The addition of the text that is now ORS 133.220(3) also indicates that an arrest for a parole violation must be subject to ORS 162.315. That provision, by its plain terms, indicates that a parole and probation officer may effect an arrest "under a warrant" and must comply with ORS 133.239 in doing so. It implicitly recognizes the authority granted to the Board of Parole and Post-Prison Supervision and peace officers and parole and probation officers in ORS 144.331. ORS 144.331 grants the board authority to suspend parole or post-prison supervision (PPS)

> "of any person under its jurisdiction upon being informed and having reasonable grounds to believe that the person has violated the conditions of parole or [PPS] and may order the *arrest* and detention of such person. The written order of the board is sufficient *warrant* for any law enforcement officer to take into custody such person. A sheriff, municipal police officer, constable, *parole and probation officer*, prison official or other *peace officer* shall execute the order."

(Emphases added.) Accordingly, the board may order the arrest of a person for violating parole, the written order constitutes a warrant for arrest, and an array of law enforcement officers, including peace officers and parole and probation officers, are authorized to execute the warrant and arrest the parolee. Therefore, ORS 133.220, in part, recognizes the authority granted to the board, peace officers, and parole and probation officers in ORS 144.331 to arrest a person for parole violations.

To summarize the legislative changes to the statutory scheme in 2005, the legislature added "parole and probation officer" to ORS 162.315 to bring those officers within the purview of the resisting arrest statute. Further, it added ORS 133.220(3) to clarify that a parole and probation officer has authority to arrest under a warrant and ORS 133.220(4)

to confirm that a parole and probation officer may arrest a parole violator without a warrant for parole violations. In view of that history, it is clear that the legislature intended that taking a person into custody for a parole violation would constitute an arrest for purposes of the resisting arrest statute.

When we consider the statutory scheme as it now exists in light of the context of this case, the use of the definition of arrest in ORS 133.005(1) would conflict with the legislature's intent that taking a person into custody for parole violations is an arrest for purposes of the resisting arrest statute. This case, therefore, presents a circumstance in which, in order to carry out the legislature's intent, we must conclude that an arrest for parole violations is an arrest for purposes of ORS 162.315.

In sum, ORS 162.315 provides that a person commits the crime of resisting arrest if the person "intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest." Arrest has the meaning given to it in ORS 133.005. The legislature included the phrase "unless the context requires otherwise" in ORS 133.005 to recognize that some circumstances may require the application of a definition of "arrest" different than the one contained in ORS 133.005(1). The statutory scheme indicates just such a circumstance—an arrest may be effected for violations of conditions of probation, parole, or post-prison supervision. Accordingly, for purposes of ORS 162.315, a person is arrested when taken into custody for violating parole. In this case, because taking a person into custody for parole violations is an arrest, and because there is evidence from which a rational trier of fact could have found the essential elements of resisting arrest beyond a reasonable doubt, the trial court properly denied defendant's motion for judgment of acquittal.

Affirmed.

**SERCOMBE, J.,** dissenting.

The legislative history of a statute can be used to "assist a court in its construction of a statute" under ORS 174.020(1)(b). That history, however, cannot be used to change

the plain meaning of a statute. *See State v. Gaines*, 346 Or 160, 173, 206 P3d 1042 (2009) ("When the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different."); *see also Suchi v. SAIF*, 238 Or App 48, 55, 241 P3d 1174 (2010), *rev den*, 350 Or 231 (2011) ("Even assuming that the legislative history supported claimant's interpretation, we are required not to construe a statute in a way that is inconsistent with its plain text.").

The context of a statute—including other provisions of the same statute as codified or originally enacted—can be used to give meaning to a statutory term in order to "construe each part [of a statute] together with the other parts in an attempt to produce a harmonious whole." *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997). That principle of statutory construction requires us, if possible, to give effect to all words of a statute. *See* ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."); *see also Force v. Dept. of Rev.*, 350 Or 179, 190, 252 P3d 306 (2011) ("Statutory provisions, however, must be construed, if possible, in a manner that will give effect to all of them." (Internal quotation marks omitted.)).

Based upon the legislative history and context of ORS 162.315, the majority construes the term "arrest" in ORS 162.315(2)(a) to mean something other than what the statute plainly states. It does not do this to resolve any ambiguity in the incorporated definition of the term or to give effect to the language of other parts of the statute. Instead, the majority amends the meaning of "arrest" in ORS 162.315(2)(a) so that the term is congruent with the meaning of "arrest" in some parts of ORS 133.220, a statute that authorizes peace officers, parole and probation officers, private persons, and federal officers to make arrests under particular circumstances. But that associated meaning of "arrest" and amendment of ORS 162.315(2)(a) is not necessary to give effect to any part of ORS 162.315. Because the majority's amendment of the statute is inconsistent with ORS 174.010, which requires courts to enforce statutes as written, I respectfully dissent.

Defendant was convicted under ORS 162.315 for resisting an arrest made by a peace officer for a parole violation. ORS 162.315 defines the crime of resisting arrest. It provides, in relevant part:

"(1)   A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

"(2)   As used in this section:

"(a)   'Arrest' has the meaning given that term in ORS 133.005 and includes, but is not limited to, the booking process."

In turn, ORS 133.005 provides, in relevant part:

"As used in ORS 133.005 to 133.400 and 133.410 to 133.450, unless the context requires otherwise:

"(1)   'Arrest' means to place a person under actual or constructive restraint or to take a person into custody *for the purpose of charging that person with an offense.*"

(Emphasis added.) It is undisputed that "an offense" does not encompass a violation of a condition of parole or probation.

Defendant argues that, because he was taken into custody for an alleged parole violation, and not for the purpose of being charged with an offense, he did not resist arrest within "the meaning given that term in ORS 133.005." Given the plain meaning of the statute, defendant is correct.

Prior to 1997, ORS 162.315 did not contain a definition of "arrest." ORS 162.315(2)(a) was added to the statute by Oregon Laws 1997, chapter 749, section 3.[1] We construed the incorporated definition of "arrest" in ORS 162.315(2)(a) in *State v. Pierce*, 226 Or App 224, 229, 203 P3d 290, *rev den*,

---

[1] Prior to that 1997 amendment to ORS 162.315, the court both used and eschewed the use of the definition of "arrest" from ORS 133.005 in applying the statute. *Compare State v. Bolden*, 104 Or App 356, 359, 801 P2d 863 (1990), *rev den*, 311 Or 166 (1991) (definition of arrest from ORS chapter 133 was applicable to resisting arrest statute, ORS 162.315, when the defendant resisted arrest during the booking process), *with State ex rel Juv. Dept. v. Stout*, 107 Or App 233, 237, 237 n 2, 811 P2d 660 (1991) (stating that the definition of "arrest" from ORS chapter 133 did not apply to the resisting arrest statute, ORS 162.315, and concluding that "the term 'arrest' [did] not depend on the officer's statutory authority to make an arrest, so long as the officer was acting under 'color of official authority'").

346 Or 213 (2009), holding that the phrase "for the purpose of charging that person with an offense" modifies the phrase "plac[ing] a person under actual or constructive restraint" and the phrase "tak[ing] a person into custody."

In 2005, the statute was amended again by House Bill (HB) 3379 (2005). Or Laws 2005, ch 668, § 2. That bill added "parole and probation officer" to the definition of the crime of resisting arrest in ORS 162.315(1) so that a person could unlawfully resist either a "peace officer" or a "parole and probation officer."[2] There have been no changes to ORS 162.315 since 2005.

Until now, we have not thought the provisions of ORS 162.315 to be ambiguous or complex in their application. For example, in *State v. Powell*, 209 Or App 255, 147 P3d 933 (2006), the issue was whether the defendant's resistance to a blood draw at a hospital after his arrest amounted to a violation of ORS 162.315. After quoting the statute and the incorporated definition of "arrest" in ORS 133.005, we concluded that the blood-draw interaction did not constitute resistance to the defendant's custodial status of arrest, reasoning as follows:

> "The meaning of the statute is clear from its text. A person violates the statute if he or she intentionally resists an officer *making an arrest*, which includes but is not limited to, the booking process. *The legislature has specifically*

---

[2] Section 2 of HB 3379 provided:

"ORS 162.315 is amended to read:

"162.315. (1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer **or parole and probation officer** in making an arrest.

"(2) As used in this section:

"(a) 'Arrest' has the meaning given that term in ORS 133.005 and includes, but is not limited to, the booking process.

"**(b) 'Parole and probation officer' has the meaning given that term in ORS 181.610.**

"* * * * *

"(3) It is no defense to a prosecution under this section that the peace officer **or parole and probation officer** lacked legal authority to make the arrest or book the person, provided the [*peace*] officer was acting under color of official authority."

Or Laws 2005, ch 668, § 2 (additions in boldface; deletions italicized in brackets).

> *defined the words 'arrest' and 'resist.' A person does not
> violate the statute unless both definitions are satisfied.* The
> language 'but is not limited to,' which was added by the
> legislature in 1997, Or Laws 1997, ch 749, § 3, does not
> change that requirement. It merely extends the statute
> beyond 'behavior clearly intended to *prevent* being taken
> into custody' to behavior intended to resist custodial status
> *after* a person is taken into custody. * * * The legislature
> defined arrest to include the booking process, but expressed
> no intent to include in that definition the seizure of blood
> where a person was already in custody and the search was
> not incident to the arrest."

*Id.* at 260 (second emphasis added; remaining emphases in
original).

The majority reasons that we should not apply
straightforwardly the definition of "arrest" here—as we did
in *Powell*—because (1) the definition of "arrest" in ORS
133.005 is conditioned by the phrase "unless the context
requires otherwise" (presumably allowing a different mean-
ing of "arrest" depending upon the factual context of the
particular application of the resisting arrest statute), (2) the
legislature empowered parole and probation officers to arrest
supervised persons for violations of conditions of super-
vision in HB 3379, and, therefore, (3) an expanded meaning
of "arrest" is necessary to give effect to that new authority.
The majority states:

> "[The state] contends that the proper analysis of the resist-
> ing arrest statute in this case hinges on the phrase 'unless
> the context requires otherwise' in ORS 133.005. That is,
> the state maintains that the operative context in this case
> (*i.e.*, an arrest under a warrant for a parole violation),
> when viewed in light of statutes that make taking a person
> into custody for a parole violation an arrest, compels the
> conclusion that the legislature intended an arrest for a
> parole violation to qualify as an 'arrest' under ORS 162.315.

> "* * * [W]e conclude that the statutory text, when con-
> sidered in context and in light of the applicable legislative
> history, indicates that the legislature intended an arrest
> by a peace officer or a parole and probation officer for a
> parole violation to qualify as an arrest under the resisting
> arrest statute. The 'unless the context requires otherwise'
> provision in ORS 133.005 and the legislative history of

House Bill (HB) 3379 (2005) guide our conclusion that, in this context, a departure from the standard definition of 'arrest' in ORS 133.005(1) is required in order to avoid conflicting with the legislative intent."

256 Or App at 204.

The term "arrest" in ORS 162.315(2)(a) is not ambiguous. With respect, the "unless the context requires otherwise" language in the introduction to the definitions listed in ORS 133.005 is immaterial to any analysis of the legislative intent underlying the amendment of ORS 162.315 in 1997 or 2005. As noted, ORS 133.005 provides, in part, that, "[a]s used in ORS 133.005 to 133.400 and 133.410 to 133.450, unless the context requires otherwise: (1) 'Arrest' means * * *." That provision plainly says that the term "arrest" has a particular meaning *as used in* various statutes in ORS chapter 133, unless the context of the application *of those ORS chapter 133 statutes* requires otherwise. Because we are neither construing the meaning of, nor applying any of, the listed ORS chapter 133 statutes, the "unless the context requires otherwise" provision is immaterial.

Instead, "arrest," for purposes of the application of ORS 162.315, "has *the meaning* given that term in ORS 133.005." ORS 162.315(2)(a) (emphasis added). There is only one "meaning given ['arrest'] in ORS 133.005." That meaning is "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense." ORS 133.005(1). Thus, even if "arrest" has an elastic meaning when used in the ORS chapter 133 statutes listed in ORS 133.005, under ORS 162.315(2)(a), "arrest" has a single, fixed meaning for purposes of ORS 162.315(1)—that is, "the meaning given that term in ORS 133.005." Stated differently, "arrest" does not have an indeterminate meaning under ORS 162.315— *i.e.*, one meaning for one factual application of ORS 162.315 and an entirely different meaning for another factual application of that same statute. That construction would be inconsistent with the statute's reference to "the meaning" of "arrest" in ORS 162.315(2)(a) and with the constitutional requirement that statutes defining crimes give reasonable notice of their content. *See State v. Christian*, 249 Or App 1,

27 n 13, 274 P3d 262, *rev allowed*, 352 Or 564 (2012) (Edmonds, S. J., dissenting).

Further, a broader meaning of "arrest" is not necessary to give effect to related statutory changes made by HB 3379 in 2005. The majority examines the changes to ORS 133.220 made by HB 3379 and concludes that the effect of those changes is to empower a parole and probation officer to arrest a supervised person, with or without a warrant, for a violation of conditions of parole or probation.[3] Thus, according to the majority, when "parole and probation officer" was added to ORS 162.315(1) in the same bill, the legislature intended to include resisting that type of arrest within its ambit. The majority reasons:

> "In HB 3379, the legislature added what are now ORS 133.220(3) and (4). In subsection (4), the legislature unambiguously recognized that an arrest may be effected for parole, probation, and post-prison supervision violations. When considered with the change to ORS 162.315 and the legislative history of HB 3379, it is evident that, in doing so, the legislature changed the statutory scheme to recognize that taking a person into custody for violating parole is an arrest for purposes of the resisting arrest statute.
>
> "The addition of the text that is now ORS 133.220(3) also indicates that an arrest for a parole violation must be subject to ORS 162.315. * * * Therefore, ORS 133.220, in part, recognizes the authority granted to the board, peace officers, and parole and probation officers * * * to arrest a person for parole violations."

256 Or App at 207-08.

---

[3] Section 4 of HB 3379 made changes to ORS 133.220 as follows:

"ORS 133.220 is amended to read:

"133.220. An arrest may be effected by:

"(1) A peace officer under a warrant;

"(2) A peace officer without a warrant;

"**(3) A parole and probation officer under a warrant as provided in section 6 of this 2005 Act;**

"**(4) A parole and probation officer without a warrant for violations of conditions of probation, parole or post-prison supervision;**

"[*(3)*] **(5)** A private person; or

"[*(4)*] **(6)** A federal officer."

Or Laws 2005, ch 668, § 4 (additions in boldface; deletions italicized in brackets).

Under the majority's reasoning, because the amendments to "ORS 133.220(3) * * * clarify that a parole and probation officer has authority to arrest under a warrant and ORS 133.220(4) * * * confirm[s] that a parole and probation officer may arrest a parole violator without a warrant for parole violations[,] * * * [the legislative intent] is clear that * * * taking a person into custody for a parole violation [is] an arrest for purposes of the resisting arrest statute." 256 Or App at 208-09.

However, the authority given to parole and probation officers by HB 3379 to arrest persons for violations of conditions of supervision was not new. The amendment to ORS 133.220 to add subsection (4), authorizing an arrest by a "parole and probation officer without a warrant for violations of conditions of probation, parole or post-prison supervision" merely confirmed the then-existing arrest authority of a parole and probation officer under ORS 137.545(2) and ORS 144.331.[4]

Instead, HB 3379 amended ORS 133.220 to give new authority to parole and probation officers—that is, authority to arrest supervised persons under an arrest warrant for a crime. That new authority to arrest for a crime, in turn, required an amendment to ORS 162.315 to make it a violation of the statute to resist such an arrest by a parole and probation officer. It is certainly not necessary, as the majority

---

[4] ORS 137.545(2) provides:

"At any time during the probation period, the court may issue a warrant and cause a defendant to be arrested for violating any of the conditions of probation. Any parole and probation officer, police officer or other officer with power of arrest may arrest a probationer without a warrant for violating any condition of probation * * *."

Analogously, ORS 144.331(1) provides:

"The State Board of Parole and Post-Prison Supervision may suspend the parole or post-prison supervision of any person under its jurisdiction upon being informed and having reasonable grounds to believe that the person has violated the conditions of parole or post-prison supervision and may order the arrest and detention of such person. The written order of the board is sufficient warrant for any law enforcement officer to take into custody such person. A sheriff, municipal police officer, constable, parole and probation officer, prison official or other peace officer shall execute the order."

When a person is arrested under ORS 144.331, the person is then incarcerated in a county jail and held for a hearing, ORS 144.341.

seems to suggest, to broaden the meaning of "arrest" beyond an arrest for "an offense" in order to give effect to the phrase "parole and probation officer" in ORS 162.315(1).

As originally introduced and adopted by the House, HB 3379 amended the definition of "peace officer" in ORS 161.015(4) to include "parole and probation officer." That bill was supported by the Federation of Oregon Parole and Probation Officers and its union, the American Federation of State, County, and Municipal Employees (AFSCME), in a hearing before the House Judiciary Subcommittee on Criminal Law (the subcommittee). Minutes, House Judiciary Committee, Subcommittee on Criminal Law, HB 3379, May 10, 2005. As explained by the AFSCME representative, Mary Botkin, under then-current law, a "parole and probation officer's scope of authority is limited to offenders on supervision." Testimony, House Judiciary Committee, Subcommittee on Criminal Law, HB 3379, May 10, 2005, Ex C (statement of Mary Botkin). Thus, parole and probation officers "[a]re only authorized to arrest and/ or detain supervised offenders for violations specific to their supervision" and "[d]o not have authority to arrest supervised offenders on lawful warrants unless the warrant is related to the offender's supervision. For example, a [parole and probation officer] is not authorized to serve lawful warrants on offenders for new crimes (such as Rape or Assault)." *Id.* The proposed change would have made the arrest authority of a parole and probation officer coextensive with that of a "peace officer" under ORS 133.220, so that a parole and probation officer could arrest a supervised person for new crimes, or any person for crimes committed in the officer's presence. A related effect of the change would have meant that a parole and probation officer, as a "peace officer," would come within the scope of ORS 162.247 (crime of interference with a peace officer) and ORS 162.315 (crime of resisting arrest).

The proposed expansion of the arrest authority of parole and probation officers was opposed by the Department of Corrections (DOC). In written testimony, the director of DOC wrote:

> "This bill is not necessary to authorize parole and probation officers to carry out their duties. Under ORS 137.620, parole and probation officers now have peace officer authority only in the execution of their duties in regard to those under supervision of a court or the Board of Parole and Post-Prison Supervision.
>
> "Expanding the designation of parole and probation officers to have full 'peace officer' authority at all times could extend their authority to persons not under supervision and beyond the scope of these officers' employment."

*Id.* at Ex D (statement of Max Williams). The bill passed the subcommittee, the House Judiciary Committee, and the House itself.

In the Senate, the bill was modified to eliminate the amendment to the definition of "peace officer." New provisions were proposed and passed by the Senate Rules Committee that gave the bill its ultimate form and content: proposed changes to ORS 162.247 (crime of interference with peace officer), ORS 162.315 (crime of resisting arrest), ORS 133.140 (content of an arrest warrant), and ORS 133.220 (persons authorized to arrest), and a new section on the authority of a parole and probation officer to arrest under a warrant. Those changes limited the arrest authority of parole and probation officers to supervised persons. Section 7 of the bill established a task force to study the arrest authority of parole and probation officers over nonsupervised persons. The Association of Oregon Counties supported those changes in written testimony to the Senate Committee on Rules, noting that

> "[t]he workgroup amendments address all the goals the proponents want except the ability to arrest non-supervised people. They make it absolutely clear that the protections the proponents advocate for parole and probation officers will apply with respect to:
>
> "a.   Resisting arrest;
>
> "b.   Interfering with arrest; and
>
> "c.   The ability to arrest on a warrant anyone who is on parole, probation or post-prison supervision."

Testimony, Senate Committee on Rules, HB 3379, July 1, 2005, Ex Z (statement of Paul Snyder).

As noted, section 4 of HB 3379 amended ORS 133.220 to add the following subsections to the existing list of persons authorized to effect an arrest:

"(3)  A parole and probation officer under a warrant as provided in section 6 of this 2005 Act;

"(4)  A parole and probation officer without a warrant for violations of conditions of probation, parole or post-prison supervision[.]"

Or Laws 2005, ch 668, § 4.

The new authority granted by section 4 of HB 3379 to arrest "under a warrant" refers to a criminal arrest warrant. The "warrant" referenced in section 4 of HB 3379 is the same as the "warrant" referenced in section 3 of the bill, which provided that

"ORS 133.140 is amended to read:

"133.140. A warrant of arrest shall:

"(1)  Be in writing;

"(2)  Specify the name of the person to be arrested, or if the name is unknown, shall designate the person by any name or description by which the person can be identified with reasonable certainty;

"(3)  State the nature of the crime;

"(4)  State the date when issued and the county or city where issued;

"(5)  Be in the name of the State of Oregon or the city where issued, be signed by and bear the title of the office of the magistrate having authority to issue a warrant for the crime charged;

"(6)  Command any peace officer, **or any parole and probation officer for a person who is being supervised by the Department of Corrections or a county community corrections agency,** to arrest the person for whom the warrant was issued and to bring the person before the magistrate issuing the warrant, or if the magistrate is absent or unable to act, before the nearest or most accessible magistrate in the same county;

"(7)   Specify that the arresting officer may enter premises, in which the officer has probable cause to believe the person to be arrested to be present, without giving notice of the officer's authority and purpose, if the issuing judge has approved a request for such special authorization; and

"(8)   Specify the amount of security for release."

Or Laws 2005, ch 668, § 3 (additions in boldface).

Section 6 of HB 3379, referenced in section 4 of the measure regarding arrest-warrant authority, limited the authority to arrest to supervised persons and set out procedures that otherwise apply to arrests for criminal charges but not to arrests for violations of supervisory conditions. *See* ORS 144.341 (procedure after arrest for violations of parole or post-prison supervision). It provided:

"(1)   As used in this section, 'parole and probation officer' has the meaning given that term in ORS 181.610.

"(2)   A parole and probation officer may arrest a person if the person is being supervised by the Department of Corrections or a county community corrections agency.

"(3)(a)   A parole and probation officer making an arrest under this section shall, without unnecessary delay, take the arrested person before a magistrate or deliver the arrested person to a peace officer.

"(b)   The parole and probation officer retains authority over the arrested person only until the person appears before a magistrate or until the law enforcement agency having general jurisdiction over the area in which the arrest took place assumes responsibility for the person."

Or Laws 2005, ch 668, § 6.

Thus, viewing the measure as a whole, section 4 of HB 3379 increased the authority of parole and probation officers to arrest supervised persons under an arrest warrant to include arrests under a criminal arrest warrant. For that reason, section 3 amended the criminal arrest warrant statute to include parole and probation officers, section 6 required parole and probation officers to take a person arrested under a warrant to a magistrate or to a peace officer, rather than to the supervisory authority, and section 2 amended the resisting criminal arrest statute to include

parole and probation officers as persons who could not be lawfully resisted.

Each of those changes—including the amendment to ORS 162.315(1) at issue—implements the expanded authority to arrest under a warrant conferred on parole and probation officers by the amendment to ORS 133.220(3) by section 4 of the bill. There is no need to read the amendment to ORS 162.315(1), as does the majority, to do anything more—that is, to implicitly change the meaning of "arrest" in the statute to mean something different than the referenced, express definition of the term. Because parole and probation officers have authority to arrest for a crime in limited circumstances, ORS 162.315 can be applied as written. It does not need judicial amendment in order to give effect to all of its terms.

Thus, the 2005 addition of the term "parole and probation officer" to ORS 162.315(1) by HB 3379 did not implicitly alter the meaning of "arrest" as set forth expressly in that statute, nor did it create an inconsistency within ORS 162.315. *HB 3379, in fact, readopted the definition of "arrest" in ORS 162.315(2)(a) without change.* Rather, the amendment to ORS 162.315(1) by HB 3379 makes it unlawful to resist efforts by a parole and probation officer *to arrest a person for an offense.* The construction of ORS 162.315(1) as limited to arrests for an offense is consistent with the unambiguous text of the provision, its context, and its legislative history. Because defendant was not being arrested for an offense, the court erred in denying his motion for judgment of acquittal on the charge of resisting arrest under ORS 162.315. Because the majority concludes otherwise, I respectfully dissent.