704 July 10, 2014 No. 46

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

CURTIS DWAYNE McCLURE,
*Petitioner on Review.*

(CC 090850307; CA A143705; SC S061434)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 11, 2014.

Jedediah Peterson, Deputy Public Defender, Salem, argued the case and filed the brief for the petitioner on review. With him on the brief was Peter Gartlan, Chief Defender.

Jona Maukonen, Assistant Attorney General, Salem, argued the case and filed the brief for the respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
* Appeal from Multnomah County Circuit Court, Leslie M. Roberts, Judge. 256 Or App 200, 300 P3d 210 (2013).

**WALTERS, J.**

In this criminal case, defendant was convicted of resisting arrest for violating the terms of his parole. We conclude, as did the trial court and the Court of Appeals, that an arrest for a parole violation qualifies as an arrest for purposes of ORS 162.315—the resisting arrest statute—and affirm.

Because the jury found defendant guilty, we present the facts in the light most favorable to the state. *State v. Lewis*, 352 Or 626, 628, 290 P3d 288 (2012). In 2009, defendant was walking in Portland's Old Town when two officers stopped him, engaged him in conversation, and asked for his name. Defendant complied, asked if he was free to leave, and, after receiving a positive response, did so. One officer followed defendant at a distance while the other officer conducted a warrant check, which revealed an outstanding warrant for defendant's arrest for a parole violation.[1] The officers then intercepted defendant, informed him that there was a warrant for his arrest, and began to restrain defendant. Defendant tightened his arms, grasped at one officer's fingers, and, yelling and screaming, held onto a utility pole. The officers attempted a "hair hold take down," and one officer struck defendant in the torso in an attempt to force defendant to the ground. The officers also repeatedly instructed defendant to "stop resisting." Notwithstanding the officers' actions and instructions, it was only with the assistance of private security officers that the officers were able to force defendant to the ground and handcuff him.

Defendant was charged with resisting arrest under ORS 162.315, which provides, in part:

"(1)  A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer *in making an arrest.*

---

[1] It is not clear from the record whether the officers knew that the warrant was for a parole violation. The officers testified only that the computer indicated an "outstanding warrant."

"(2)   As used in this section:

"(a)   *'Arrest' has the meaning given that term in ORS 133.005* and includes, but is not limited to, the booking process.

"* * * * *

"(3)   It is no defense to a prosecution under this section that the peace officer or parole and probation officer lacked legal authority to make the arrest or book the person, provided the officer was acting under color of official authority."

(Emphases added.) ORS 133.005 defines "arrest" as follows:

"As used in ORS 133.005 * * *, unless the context requires otherwise:

"(1)   'Arrest' means to place a person *under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense.* A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest."

(Emphasis added.) Finally, an "offense" is defined in ORS 161.505 as

"conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. An offense is either a crime, as described in ORS 161.515, or a violation, as described in ORS 153.008."

At trial, defendant filed a motion for acquittal relying on the italicized phrases in those statutes. Defendant cited a Court of Appeals case, *State v. Pierce*, 226 Or App 224, 229, 203 P3d 290, *rev den*, 346 Or 213 (2009), for the proposition that "arrest," as used in ORS 162.315 and defined in ORS 133.005, requires that a person be restrained or placed in custody "for the purpose of charging that person with an offense." Defendant argued that, because a parole violation is not an "offense" as defined in ORS 161.505 and because he was restrained for a parole violation, the officers had not placed him under restraint "for the purpose of charging him with an offense" and therefore had not "arrested" him within the meaning of ORS 162.315. The trial court denied defendant's motion, concluding that a parole violation was a "part of the prosecution of the [underlying] offense."

The jury convicted defendant and the Court of Appeals affirmed his conviction. *State v. McClure*, 256 Or App 200, 300 P3d 210 (2013). The court concluded that, although an arrest for a parole violation is not an arrest "for the purpose of charging [defendant] with an offense," the legislature nonetheless intended that such an arrest qualify as an "arrest" for the purposes of ORS 162.315. *Id*. at 204. Judge Sercombe dissented. He viewed the majority's interpretation of ORS 162.315 as contrary to the text of the statute and would have held that ORS 162.315 does not apply unless the individual is being arrested for an "offense." *Id*. at 211, 221 (Sercombe, J., dissenting).

In this court, defendant's statutory argument is again straightforward. As noted, ORS 162.315(1) provides that a person resists "arrest" if that person "intentionally resists *** a peace officer or parole and probation officer in making an arrest." ORS 162.315(2)(a) defines "arrest" as having "the meaning given that term in ORS 133.005." ORS 133.005, in turn, provides that the term "arrest" means "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense." As defendant argues and the state acknowledges, a probation violation is neither a crime nor a violation, and thus is not an offense. Therefore, defendant argues, because he was restrained for the purpose of revoking his probation and not "for the purpose of charging [him] with an offense," he did not resist "arrest" as that term is defined in ORS 133.005(1) and could not be convicted under ORS 162.315.

The state sees two points of vulnerability in defendant's analysis. First, the state takes issue with defendant's construction of ORS 133.005(1). As noted, that statute defines "arrest" using two disjunctive clauses: (1) "to place a person under actual or constructive restraint," or (2) "to take a person into custody." Those clauses are followed by a qualifying phrase: "for the purpose of charging that person with an offense." The state argues that the qualifying phrase modifies only the second clause and therefore that an "arrest" may occur under ORS 133.005(1) when a person is actually or constructively restrained, even if the purpose of the restraint is not to charge the person with an

offense. Alternatively, the state contends that ORS 133.005 includes the introductory phrase "unless context requires otherwise." Therefore, the state argues, the context of the resisting arrest statute requires that ORS 133.005(1) be interpreted to encompass arrest for a probation violation.

We begin our analysis with the text of ORS 133.005(1) and the state's argument that, based on the "doctrine of the last antecedent," the qualifying phrase "for the purpose of charging that person with an offense" modifies only the immediately preceding clause "to take a person into custody." That doctrine instructs that, "where no contrary intention appears," referential and qualifying words and phrases refer solely to "'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'" *State v. Webb*, 324 Or 380, 386, 927 P2d 79 (1996) (quoting Norman J. Singer, 2A *Sutherland Statutory Construction* § 47.33 at 270 (5th ed 1992)). In this case, because other evidence of legislative intent is available, we turn to the enactment history of the pertinent statutes.

The legislature enacted the resisting arrest statute, ORS 162.315, in 1971. Or Laws 1971, ch 743, § 206. At that time, the resisting arrest statute did not include a definition of "arrest." However, two other statutes did define that term—*former* ORS 133.210 and *former* ORS 133.250. In 1973, the legislature repealed those two statutes and adopted a new definition of "arrest" codified at ORS 133.005(1). Or Laws 1973, ch 836, § 62. Then, in 1997, the legislature amended the resisting arrest statute to define the term "arrest" as used in that statute by reference to the definition of "arrest" in ORS 133.005(1). Or Laws 1997, ch 749, § 3. It is that definition that is the focus of our inquiry, and we therefore think it helpful to consider the text and transformation of its predecessors in greater detail.

The two predecessors to ORS 133.005—*former* ORS 133.210 and *former* ORS 133.250—both date to the Deady Code. *Former* ORS 133.210 defined "arrest" as "the taking of a person into custody, that he may be held to answer for a crime." General Laws of Oregon, Crim Code, ch XXXVI, § 360, p 504 (Deady 1845-1864); OCLA § 26-1522; ORS 133.210 (1969). *Former* ORS 133.250 provided that "[a]n

arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer." General Laws of Oregon, Crim Code, ch XXXVI, § 364, p 504; OCLA § 26-1526; ORS 133.250 (1969). Thus, *former* ORS 133.250 did not require that the officer's restraint or the arrestee's submission to custody be for any particular purpose. Only *former* ORS 133.210, which defined arrest as "the taking of a person into custody," included the qualifying phrase "that he may be held to answer for a crime."

In 1973, the legislature repealed *former* ORS 133.210 and *former* ORS 133.250 and replaced them with one statute—ORS 133.005. The Commentary to the Criminal Procedure Code provided: "'Arrest' is derived, in part, from ORS 133.210 and 133.250, but specifically includes 'constructive' restraint and, with respect to the purpose of custody, uses the phrase, 'charging him with an offense' in place of 'holding to answer for a crime.'" Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 89, 52 (November 1972) (Commentary to the Criminal Procedure Code).[2] The legislative purpose was not to change the substantive meaning of the term "arrest," but to make its definition "easier to understand." *See id.* ("The single definition of 'arrest' should be easier to understand than the existing double definition found in the two separate statutes.").

By 1997, when the legislature amended ORS 162.315 to provide that "'arrest' has the meaning given that term in ORS 133.005," this court had discussed ORS 133.005(1) in two cases that we consider informative. *See Liberty Northwest Ins. Corp., Inc. v. Watkins*, 347 Or 687, 692, 227 P3d 1134 (2010) ("As part of the first level of analysis, this court considers its prior interpretations of the statute.").[3] The first of those cases was *State v. Groda*, 285 Or 321, 591 P2d 1354 (1979). There, officers had detained and searched the defendant, taken his car keys, unlocked his car, removed

---

[2] "Legislative history includes the commentary to the Oregon Criminal Procedure Code." *State ex rel Turner v. Frankel*, 322 Or 363, 374, 908 P2d 293 (1995).

[3] The state argues that *State v. Mendacino*, 288 Or 231, 603 P2d 1376 (1980), also includes a pertinent discussion of ORS 133.005(1), but we agree with defendant that the passing mention of the statute in that case is not helpful in this one.

and searched a briefcase, found drugs, and then had formally arrested him. The question presented was whether the unwarranted search was lawful as a search incident to arrest, even though the formal arrest did not occur until after the search. The court acknowledged that, at the time of the search, the defendant had not been "formally arrested for the purpose of 'charging him with an offense.'" *Id.* at 325. Nevertheless, the court held that the defendant had been arrested "as that word is defined in ORS 133.005(1)," because, "when the officers searched the defendant, they placed him 'under actual * * * restraint.'" *Id.* (ellipsis in original).

In reaching that result, the court quoted approvingly from an earlier case that had reasoned that "'it is difficult to explain how the police can search an individual without arresting him, since any substantial detention without his consent would fit the definition of an arrest found in such criminal cases as *State v. Christensen*, 151 Or 529 [1935].'" *Groda*, 285 Or at 325 (quoting *State v. Krogness*, 238 Or 135, 146-47, 388 P2d 120 (1964)). The definition of "arrest" to which the court referred in *Christensen* was that provided in *former* ORS 133.250: "an actual restraint of the person of the defendant, or * * * his submission to the custody of the officer." Thus, in *Groda,* the court understood ORS 133.005 to be consistent with *former* ORS 133.250 and to mean that an officer arrests a person both when the officer in fact substantially restrains that person's liberty and when the officer formally informs the person that the person is under arrest.

Similarly, in *State v. Heintz*, 286 Or 239, 594 P2d 385 (1979), the court held that the drawing of a defendant's blood was a reasonable search incident to arrest even though the defendant was unconscious at the time of the blood draw and had not been formally arrested. The court cited *Groda* and ORS 133.005(1) in support of its conclusion that "an arrest includes the placing of a person 'under actual or constructive restraint.'" *Id.* at 248.

What we take away from the enactment history of the pertinent statutes and this court's decisions in *Groda* and *Heintz* is that, under ORS 133.005(1), an "arrest" may

occur in two distinct circumstances—when an officer formally takes a person into custody or when an officer actually restrains a person. Our understanding is consistent with the state's argument that the legislature intended the phrase "for the purpose of charging that person with an offense" to qualify only the former circumstance. However, the question remains whether that history also supports defendant's contrary argument.

Defendant contends that the legislature used the qualifying phrase to modify both preceding clauses and to qualify both circumstances. ORS 133.005(1) specifically excludes "stop[s]" from its definition of "arrest," and defendant argues that the legislature intended to define an "arrest" (as opposed to a "stop") as a restraint that is "for the purpose of charging [a] person with an offense" to distinguish stops from arrests. Because an arrest requires probable cause to believe that a person has committed or is committing an offense, defendant argues that any restraint that constitutes an arrest must be made for the purpose of charging such an offense. After all, defendant points out, although officers may restrain and search a person and therefore "arrest" a person before they "formally arrest" that person, they must have probable cause to believe that an offense has been or is being committed. *Heintz*, 286 Or at 249; *Groda*, 285 Or at 326. Defendant argues that, to make the definition of "arrest" consistent with its exclusion of "stop[s]," an officer's restraint, whether *de facto* or *de jure*, must be supported by probable cause and "for the purpose of charging that person with an offense."

We are not persuaded. ORS 133.005(1) provides that a "stop" authorized under ORS 131.605 through 131.625 is not an "arrest." ORS 131.605(7) defines a "stop" as "a temporary restraint of a person's liberty by a peace officer."[4] ORS 131.615(2) provides that a stop may extend for "no longer than a reasonable time." Thus, for the purposes of ORS 133.005(1), the key distinction between a stop and an arrest is not whether probable cause is required, but the duration

---

[4] At the time of defendant's arrest, subsection (7) of ORS 131.605 was numbered as subsection (6); the statute was renumbered in 2011, Or Laws 2011, ch 506, § 6, but the substance of the subsection did not change.

of the restraint. Although defendant is correct that officers who make arrests must, and generally will, have probable cause to believe that an offense has been or is being committed, that does not mean that, in enacting ORS 133.005(1), the legislature did not intend to define "arrest" more broadly. This case—in which the officer restrained defendant for the purpose of charging him with a probation violation rather than an offense—is but one illustration of the circumstances in which an officer may restrain a person without probable cause or for a different purpose.

Subsection (3) of ORS 162.315 provides another illustration. Subsection (3) provides that an individual who resists an arrest is guilty of an offense, regardless of the legality of the arrest: "It is no defense to a prosecution under this section that the [arresting] officer lacked legal authority to make the arrest ***, provided the officer was acting under color of official authority." The Commentary to the Criminal Code stated that that subsection "negatives the defense that the arrest resisted was unlawful, provided the peace officer is acting 'under color of his official authority.'" Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 206, 204 (July 1970) (Commentary to the Criminal Code).[5] The Commentary noted that that provision "departs from common law and the American majority view governing the right to resist a lawful arrest." *Id*. The Commentary described the "prevailing rule" as allowing "reasonable resistance to an unlawful arrest," but contended that that rule was not a "desirable means of challenging arrests made under color of law," because such resistance "threaten[s]" to create "[c]ivil disorder and disrespect for the law" and because resistance to even an unlawful arrest involves a "threat to society posed by violent street confrontations between private citizens and the police." *Id*. The Commentary recommended, instead, that citizens who were unlawfully arrested have recourse to "traditional tort remedies, which today have been greatly liberalized in favor of the individual citizen." *Id*. at 204-05.

---

[5] We consult the Commentary to the Criminal Code as part of our analysis of the legislative history of the statutes. *See State v. Wolleat*, 338 Or 469, 475-76, 111 P3d 1131 (2005) (looking to Commentary to the Criminal Code as source of legislative history); *State v. Garcia*, 288 Or 413, 416, 605 P2d 671 (1980) (same).

The Commentary concluded that, in "prohibiting by statute the forcible resistance of an arrest made under color of law, Oregon will enter the mainstream of progressive legislation." *Id.* at 205.[6]

In enacting ORS 162.135(3), the legislature prohibited resistance to arrest even if the arrest is unlawful. Thus, at that time, the legislature must have understood ORS 133.005(1) to define "arrest" to include unlawful restraint, such as arrest without probable cause. To construe ORS 133.005(1) as inapplicable when an officer acts without the "purpose of charging [a] person with an offense" would be inconsistent with the legislature's intent in enacting subsection (3). If we instead interpret ORS 133.005(1) to define "arrest" to include all instances, other than stops, in which an officer places a person under actual or constructive restraint, our interpretation more closely aligns with ORS 162.315(3).[7]

Thus, the text, context, and legislative history of ORS 133.005 convince us that the legislature did not intend the qualifying phrase "for the purpose of charging that

---

[6] Also in 1971, the legislature enacted ORS 161.260, which provides that a "person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful." Or Laws 1971, ch 743, § 32. *See State v. Oliphant*, 347 Or 175, 192 n 15, 218 P3d 1281 (2009) (noting that, prior to the enactment of ORS 161.260, "Oregon law gave a person the right to use force to resist an 'unlawful' arrest" and that the "primary concern of the drafters was to discourage people from engaging arresting officers in combat because of differences of opinion concerning the validity of an arrest").

[7] That interpretation also is more consistent with the legislative history of the resisting arrest statute. As noted, the Commentary to the Criminal Code stated that ORS 162.315 was intended to curtail the threat of "[c]ivil disorder and disrespect for the law" posed by resistance to officers acting under color of law. *See* Commentary to the Criminal Code at 204. By imposing criminal liability on those who resist even unlawful arrests, the legislature indicated that ORS 162.315 was intended to sweep broadly to fulfill that purpose, an intent that is counter to defendant's restrictive interpretation of ORS 133.005(1). Additional support for that view is found in the legislature's most recent amendments to ORS 162.315. In 2005, the legislature provided that it is a crime to resist parole and probation officers, as well as police officers. *See* Or Laws 2005, ch 668, § 2 (a person resists arrest by resisting "a person known by the person to be a peace officer or parole and probation officer in making an arrest"). Although that amendment changed the description of the persons who may make an arrest for purposes of the resisting arrest statute, not the definition of the term "arrest," the amendment indicates a legislative intent to make the resisting arrest statute broadly applicable.

person with an offense" to limit the clause "place a person under actual or constructive restraint." We conclude that, as used in ORS 162.315, the legislature intended the phrase "resisting arrest" to mean resisting "actual or constructive restraint" that is more than a stop, whether or not that restraint is imposed for the purpose of charging a person with an offense.[8] We therefore conclude that defendant was appropriately charged with resisting arrest and that the trial court correctly denied his motion for acquittal.[9]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[8] We therefore need not reach the state's alternative argument based on the introductory phrase to the definition of "arrest" in ORS 133.005—"unless context requires otherwise."

[9] We also conclude, as the state concedes, that the trial court erred in admitting evidence of defendant's prior conviction for resisting arrest. *See State v. Leistiko*, 352 Or 172, 186, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012) (discussing *State v. Johns*, 301 Or 535, 555, 725 P2d 312 (1986), and emphasizing that, to prove intent through a prior bad act, a "simple, unremarkable single instance of prior conduct probably will not qualify, but a complex act requiring several steps, particularly premeditated, may well qualify."). However, on the particular facts of this case, we nevertheless affirm, because the trial court's error was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (Oregon constitution requires affirmance despite error when there is little likelihood that the particular error affected the verdict).