Submitted on record and briefs April 10, conviction for resisting arrest reversed; remanded for resentencing; otherwise affirmed November 15, 2006

STATE OF OREGON,
*Respondent,*

*v.*

DANIEL RICHARD POWELL,
*Appellant.*

C031118CR; A122860

147 P3d 933

Patrick M. Ebbett, and Chilton, Ebbett & Rohr, LLC filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Paul L. Smith, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Linder* and Wollheim, Judges.

EDMONDS, P. J.

---

* Linder, J., *vice* Richardson, S. J.

**EDMONDS, P. J.**

Defendant appeals from convictions for one count of driving under the influence of intoxicants, ORS 813.010, one count of assault in the third degree, ORS 163.165, one count of resisting arrest, ORS 162.315, and one count of attempted assault of a public safety officer, ORS 163.208(1). On appeal, defendant makes three assignments of error. A discussion of the first two assignments would not benefit the bench or the bar, and we therefore reject them without discussion. We turn to the third assignment of error, in which defendant asserts that the trial court used an incorrect legal standard in finding him guilty of resisting arrest. We agree with defendant's argument and reverse as to that count.

The relevant facts are undisputed. After driving up onto the curb and back onto the road several times, defendant hit a tow truck sitting on the side of the road. His vehicle rolled onto its side, struck the tow truck driver standing next to the truck, and finally came to rest upside down. The officers who arrived at the scene shortly after the accident observed that defendant appeared intoxicated. As a result, he was arrested.

The officers later took defendant to a hospital for a blood draw. At the hospital, the officers asked defendant to consent to the blood draw, but he refused. Because the officers were concerned that the alcohol in defendant's blood would dissipate before they could obtain a search warrant, they performed a "command," or forced, blood draw. For approximately the next hour, defendant resisted efforts to obtain the draw. He tensed up his body, jerked his arms, and moved his shoulders from side to side so that the phlebotomist could not insert a needle into his arm. He also thrashed around, kicked at the officers, tried to bite one of them, and threw his head down onto a tray of needles. He called the officers obscene names and continued to fight with them. When the officers took breaks from attempting to perform the draw, defendant ceased to struggle. Eventually, seven persons were required to restrain him so that the phlebotomist could insert the syringe into his arm. Once the blood draw was completed, defendant cooperated with the officers. Defendant's blood

alcohol content was later determined to be 0.26 percent by weight.

■      At trial, defendant moved for a judgment of acquittal, arguing that he was resisting only the blood draw and not the arrest itself. During closing arguments, defendant explained:

"[DEFENSE COUNSEL]:    Regarding the resisting arrest, I'm going to go back to [*State v. Bolden*, 104 Or App 356, 801 P2d 863, *rev den*, 311 Or 166, 806 P2d 1153 (1991)], and again it says in this case that—it defines arrest as placing a person under actual or constructive restraint or taking a person into custody for the purpose of charging that person with an offense. Their purpose at the hospital—they knew what they were charging him with. They didn't wait until they got the hospital results to charge him. The purpose of the hospital was to search him. They did not—it was not for the purpose of charging him with an offense, taking him into custody, or the booking procedure.

"* * * * *

"Okay. I still think that, even if you just look at the label of the charge resisting arrest that he was not resisting arrest. He was resisting the officers; he was not resisting arrest. He was under arrest at that time. Everything that had to do with an arrest he was okay with and he was compliant with, and I think that's too broad a reading of it."

The trial court disagreed, reasoning that, under *Bolden*, a defendant is liable for resisting arrest up until the point in time that the person is actually booked. Based on that reasoning, the trial court convicted defendant of resisting arrest. On appeal, defendant reiterates his argument that the charge of resisting arrest requires "resistance to the process of taking one into custody, not resistance to acts not associated with the charging process, such as resistance to the blood draw in this case." Defendant posits that

"*Bolden* only holds that [resisting arrest includes] resistance during the period in which the officer is maintaining custody for the *'purposes of charging the individual with an offense'* (emphasis added). In this case, defendant resisted not the maintenance of his custody for the purposes of charging him with an offense but the altogether separate reason of resisting the blood draw. Defendant never

resisted his custodial status, only the forcible effort to put a needle in his veins."

The state responds that the court in *Bolden* held that "the prohibition against resisting arrest is applicable to the entire course of events during which an officer effectuates and maintains custody over an arrestee for purposes of charging the individual with an offense." *Bolden*, 104 Or App at 359-60 (internal quotation marks omitted).

■■ In our view, the correct analysis begins with the language of ORS 162.315. Whether the statute applies to defendant's conduct at the hospital is a matter of statutory interpretation. Our task is to discern the legislature's intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The best evidence of the legislature's intent is the text and the context of the statute. *State v. Barrett*, 331 Or 27, 32, 10 P3d 901 (2000). "Statutory context includes other provisions of the same statute and other related statutes, as well as the preexisting common law and the statutory framework within which the statute was enacted." *Fresk v. Kraemer*, 337 Or 513, 520-21, 99 P3d 282 (2004). Also, we presume that, with respect to any amendments to the statute after *Bolden*, the legislature was aware of our decision in that case that "the prohibition against resisting arrest is applicable to the entire course of events during which an officer effectuates and maintains custody over an arrestee for purposes of charging the individual with an offense." 104 Or App at 359 (internal quotation marks omitted); *see Weber and Weber*, 337 Or 55, 67, 91 P3d 706 (2004) ("[T]his court presumes that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing upon those statutes.").

In that light, we turn to the plain language of ORS 162.315. It provides, in part:

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

"(2) As used in this section:

"(a) 'Arrest' has the meaning given that term in ORS 133.005 and includes, but is not limited to, the booking process.

"\* \* \* \* \*

"(c) 'Resists' means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody."

ORS 133.005 defines "arrest" as "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense."

The meaning of the statute is clear from its text. A person violates the statute if he or she intentionally resists an officer *making an arrest,* which includes, but is not limited to, the booking process. The legislature has specifically defined the words "arrest" and "resist." A person does not violate the statute unless both definitions are satisfied. The language "but is not limited to," which was added by the legislature in 1997, Or Laws 1997, ch 749, § 3, does not change that requirement. It merely extends the statute beyond "behavior clearly intended to *prevent* being taken into custody" to behavior intended to resist custodial status *after* a person is taken into custody. Here, there is no evidence that defendant resisted his custodial status within the definitions provided by the legislature; he resisted only the seizure of his blood. The legislature defined arrest to include the booking process, but expressed no intent to include in that definition the seizure of blood where a person was already in custody and the search was not incident to the arrest.

That construction of ORS 162.315 is consistent with our decision in *Bolden,* where the defendant had been arrested and transported to the police station for booking. When he was taken out of the car, the defendant fought with the police officer and tried to run away. He continued to struggle throughout the booking process. In affirming the

conviction for resisting arrest, we ruled that the facts demonstrated that the defendant was "resisting his state of arrest, and that the arrest was still in progress at the time of the resistance." *Bolden*, 104 Or App at 359-60. Here, in contrast, defendant was resisting the blood draw only, not his "state of arrest."

Finally, even if ORS 162.315 is reasonably susceptible to more than one interpretation, our review of the legislative history confirms that the legislature intended that the statute apply to a defendant's conduct before and after he or she is taken into custody, where the defendant is "trying to get away." Tape Recording, House Committee on the Judiciary, HB 2992, Mar 27, 1997, Tape 18, Side A (statement of Rep Judy Uherbelau).

Conviction for resisting arrest reversed; remanded for resentencing; otherwise affirmed.