Argued and submitted May 3, 2018, affirmed May 13, petition for review denied September 17, 2020 (367 Or 75)

In the Matter of the Compensation of
Robert M. Coleman, Jr., Claimant.

Robert M. COLEMAN, Jr.,
*Petitioner,*

*v.*

SAIF CORPORATION
and Department of Corrections,
*Respondents.*

Workers' Compensation Board
1505015; A164988

466 P3d 967

Claimant, Coleman, petitions for judicial review of a Workers' Compensation Board final order that denied claimant penalties and attorney fees. In that order, the board concluded that SAIF had not unreasonably processed his claim and that claimant had not ultimately prevailed on a denied claim. In his first assignment of error, claimant argues that SAIF was required to respond to his new medical condition claim pursuant to ORS 656.267, even though his related, initial claim had not yet been accepted. In his second and third assignments of error, claimant argues that the board erred in concluding that two communications, each made after claimant's initial claim had been accepted, were not sufficient to initiate an omitted medical condition claim. SAIF argues that the board correctly rejected each of claimant's arguments. *Held*: The board did not err. The board correctly concluded that a new medical condition claim, submitted pursuant to ORS 656.267(1), cannot precede initial claim acceptance. Therefore, SAIF was not required to respond as claimant argues. Additionally, as a matter of law, neither of the subsequent communications identified by claimant initiated an omitted medical condition claim requiring a response from SAIF.

Affirmed.

Philip M. Lebenbaum argued the cause and filed the briefs for petitioner.

Julie Masters argued the cause and filed the brief for respondents.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.*

_____

* Egan, C. J., *vice* Hadlock, J. pro tempore.

DeHOOG, P. J.

Affirmed.

**DeHOOG, P. J.**

Claimant petitions for review of a final order of the Workers' Compensation Board (the board), contending in multiple assignments of error that the board erroneously determined that he is not entitled to an award of penalties and attorney fees. Claimant contends that he is entitled to penalties and fees because his employer's workers' compensation insurer, SAIF Corporation, unreasonably processed his claim and because he ultimately prevailed on a denied claim. In his first assignment of error, claimant argues that the board erred in determining that, under ORS 656.267, his formal request for coverage of a new medical condition was ineffective because he filed it before SAIF accepted his initial claim. Claimant contends that, because he validly sought coverage for a new medical condition under ORS 656.267(1), SAIF should have timely processed his claim under ORS 656.262(6)(a). SAIF responds that it properly accepted only the new medical condition claim that claimant submitted after SAIF had accepted his initial claim. In his second and third assignments of error, claimant contends that the board erred in concluding that neither his attorney's letter to an administrative law judge (ALJ) nor his treating physician's chart note qualified as a proper submission of an omitted medical condition claim. SAIF disagrees. For the reasons that follow, we conclude that the board did not err. Accordingly, we affirm.

## I.  BACKGROUND

A.  *Standard of Review*

We review the board's order pursuant to ORS 656.298(7)[1] and ORS 183.482(8).[2] *Atkins v. SAIF*, 286 Or

---

[1] ORS 656.298(7) provides, "The review [of an order of the Workers' Compensation Board] by the Court of Appeals shall be on the entire record forwarded by the board. Review shall be as provided in ORS 183.482 (7) and (8)." In relevant part, ORS 183.482(7) provides that the "[r]eview of a contested case shall be confined to the record, and the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion."

[2] ORS 183.482(8) provides, in relevant part:

"(a)  The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A)  Set aside or modify the order; or

App 70, 71, 398 P3d 463, *rev den*, 362 Or 94 (2017). Thus, we review the board's order for legal error and state the facts in accordance with the board's factual findings, which are convoluted but not disputed. *See King v. SAIF*, 300 Or App 267, 268, 452 P3d 1039 (2019) (unchallenged findings of historical facts "establish the facts for purposes of judicial review").

B.  *Procedural History*

Claimant suffered a work-related left-knee injury on June 12, 2015; he filed a workers' compensation claim the same day. On June 29, before receiving any notification as to the status of that initial claim, claimant and his doctor submitted a form 827[3] "new or omitted medical condition" claim seeking coverage for a medial femoral chondral defect in his left knee, which, he indicated, was related to his pending workers' compensation claim. On August 11, SAIF accepted claimant's initial claim for two conditions, a left knee strain and contusion, but did not reference the 827 form that claimant had filed on June 29. On October 6, petitioner's treating physician entered a chart note stating that "[t]he 827 [form] filed by me on 6/29/15 needs to be addressed [by the] insurance company." SAIF received that chart note on October 15 but took no further action at that time. As a result of SAIF's failure to address his chondral defect claim, claimant requested a hearing before an ALJ and sought a penalty and attorney fees.

On January 29, 2016, claimant wrote the ALJ hearing his case a letter in which he expressly asserted that SAIF's handling of his June 29, 2015, claim for a medial femoral chondral defect constituted a *de facto* denial, entitling

---

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"* * * * *

"(c) The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

[3]  A claimant may, under OAR 436-010-0241(1), submit a "Form 827, Worker's and Health Care Provider's Report for Workers' Compensation Claims" to request that an insurer "formally accept a new or omitted medical condition," OAR 436-010-0241(2).

him to attorney fees and costs.[4] Claimant's letter specifically challenged "SAIF's failure to accept the condition, known to SAIF at the time it did accept [a] knee contusion." The ALJ rejected claimant's assertion that SAIF's failure to respond to his June 29, 2015, submission had been a *de facto* denial, but ultimately determined that SAIF's failure to timely respond to claimant's January 29, 2016, letter had itself been a *de facto* denial. Meanwhile, on April 6, 2016, while his case remained before the ALJ, claimant had filed a new or omitted medical condition claim seeking compensation "for chondromalacia and [a] left knee medial compartment full thickness chondral cartilage defect."[5] And, on June 7, 2016, SAIF had modified its initial acceptance to include the conditions identified in claimant's April 6, 2016 claim.[6] By then, however, the 60-day statutory acceptance period for claimant's January 29, 2016, submission had long since expired. Thus, the ALJ deemed SAIF's June 7 modified acceptance to be untimely; further, the ALJ regarded that late acceptance to be a rescission of SAIF's earlier *de facto* denial. Because claimant had therefore succeeded on claims that SAIF had initially denied, *see* ORS 656.386(1), and because SAIF had unreasonably processed his claim, *see* ORS 656.262(11)(a), the ALJ concluded that claimant was entitled to both attorney fees and penalties. SAIF subsequently appealed the ALJ's order to the board.

C.   *The Board's Order*

On appeal, the board reversed the ALJ's order. The board concluded that SAIF had satisfied its initial claim processing obligations under ORS 656.262(6)(a) with its August 11, 2015, notice of acceptance addressing only claimant's initial, June 12, 2015, claim. Further, the board explained, SAIF's acceptance of the initial claim "did not constitute a *de facto* denial of other conditions identified in

---

[4] "A *de facto* denial occurs when an insurer makes no response within the period during which the insurer must either accept or deny the claim." *SAIF v. Traner*, 270 Or App 67, 69 n 2, 346 P3d 1248 (2015).

[5] At oral argument on judicial review, claimant indicated that the April 6, 2016, claim concerned the same condition as the June 29, 2015 claim.

[6] The board noted that the parties did not dispute whether this was a timely acceptance of the April 6, 2016, claim, and claimant does not suggest otherwise on judicial review.

claimant's 'pre-acceptance' 827 form" submitted on June 29, 2015. That, in part, was because "claimant's 'pre-acceptance' request for acceptance of a medial femoral chondral defect did not constitute a new/omitted medical condition claim for that condition." As a result, the board reasoned, "there [had been] nothing for SAIF to accept or deny."

As to claimant's chondral defect claim, the board concluded that SAIF had timely accepted that condition with its modified acceptance on June 7, 2016, after claimant had properly asserted a new or omitted medical condition claim identifying that condition on April 6, 2016. In reaching that conclusion, the board also concluded that the chart note that SAIF had received on October 15, 2015, had not been sufficient to assert a claim, because "the statutes [ORS 656.262(6)(d) and ORS 656.267(1)] do not provide for a physician to file a new or omitted medical condition claim on behalf of the worker."

Finally, the board concluded that claimant's January 29, 2016, letter to the ALJ had not properly asserted a claim, because it was neither a "communicat[ion] in writing" within the meaning of ORS 656.262(6)(d) (objections to notices of acceptance) nor a "clear[] request [for] formal written acceptance" under ORS 656.267(1) (new or omitted condition claims).[7] The board specifically noted that the letter had been addressed to the ALJ, not SAIF, and that it had focused on the scope of acceptance without clearly requesting SAIF's formal written acceptance of claimant's chondral defect condition. The board therefore concluded that the ALJ's award of fees and penalties was not warranted, and it reversed that award.

## II.   DISCUSSION

### A.   *The Timing of New Medical Condition Claims Under ORS 656.267(1)*

Claimant now seeks judicial review of the board's order. In his first assignment of error, claimant argues that the board erred in concluding that, because he initiated

_____

[7] The relevant portions of ORS 656.262 and ORS 656.267 are set out below. 304 Or App at 129.

his medial femoral chondral defect claim on June 29, 2015, before SAIF had accepted his initial claim in August 2015, his chondral defect claim was not a valid "new medical condition claim" and, therefore, did not require a response from SAIF.[8] Claimant argues that, under ORS 656.267(1), a worker may initiate a claim for a new medical condition "'at any time,'" thereby triggering an insurer's duty under ORS 656.262(6)(a) to timely accept or deny that claim. As a result, claimant asserts, SAIF was required to independently process his June 29 claim within 60 days, regardless of whether SAIF had yet to accept his initial claim. In response, SAIF argues that the board correctly determined that a new medical condition claim may only be submitted *after* an initial claim has been accepted.

    1.  *Statutory framework for new medical condition claims*

    To provide context for the parties' arguments, we begin with an overview of the relevant statutory framework. Claimant's first assignment of error concerns the relationship between the provisions of ORS 656.262, which primarily involve an insurer's or self-insured employer's overall claims-processing obligations, and ORS 656.267, which focuses on workers' initiation of new or omitted medical condition claims. Under ORS 656.262 ("Processing of claims and payment of compensation; * * * acceptance and denial of claim[.]"), an insurer or self-insured employer bears the responsibility of timely processing claims and compensating injured workers, ORS 656.262(1), and, except where a worker's right to compensation has been denied, a worker is entitled to payment of any compensation that is due promptly "upon the employer's receiving notice or knowledge of a claim," ORS 656.262(2).[9] ORS 656.262 further provides, in relevant part:

---

[8] Consistent with claimant's oral argument on judicial review, we refer to the claim at issue in his first assignment of error as a "new medical condition claim," despite some references in claimant's briefing to a "new/omitted medical condition claim."

[9] Although self-insured employers bear the same responsibilities as insurers under the relevant workers' compensation statutes, claimant's employer in this case was insured by SAIF. Thus, solely for ease of discussion, the balance of this opinion refers only to insurers when discussing those statutes.

"(6)(a)   Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the employer has notice or knowledge of the claim. ***

"*****

"(d)   An injured worker who believes that a condition has been incorrectly omitted from a notice of acceptance, or that the notice is otherwise deficient, first must communicate in writing to the insurer or self-insured employer the worker's objections to the notice pursuant to ORS 656.267. The insurer or self-insured employer has 60 days from receipt of the communication from the worker to revise the notice or to make other written clarification in response. *** Notwithstanding any other provision of this chapter, the worker may initiate objection to the notice of acceptance at any time.

"(7)(a)   *After claim acceptance*, written notice of acceptance or denial of claims for aggravation or *new medical or omitted condition claims properly initiated pursuant to ORS 656.267* shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the insurer or self-insured employer receives written notice of such claims. ***"

(Emphases added.)

In turn, ORS 656.267 provides, in relevant part:

"(1)   *To initiate* omitted medical claims under ORS 656.262(6)(d) or *new medical claims* under this section, the worker must clearly request formal written acceptance of a new medical condition or an omitted medical condition from the insurer or self-insured employer. *** *Notwithstanding any other provision of this chapter, the worker may initiate a new medical or omitted condition claim at any time.*

"(2)(a)   Claims properly initiated for new medical conditions and omitted medical conditions *related to an initially accepted claim* shall be processed pursuant to ORS 656.262."

(Emphases added.)

Although the parties disagree as to how the foregoing provisions apply here, there appears to be no dispute regarding the statutory claims process as a whole. That

is, typically, once an employer is on notice that a worker has a claim, the employer's workers' compensation insurer has 60 days to accept or deny that claim in writing. ORS 656.262(6)(a). If, upon receiving a notice of acceptance, a worker believes that the insurer has omitted a condition that should have been included in its acceptance or that the acceptance is otherwise deficient, the worker may notify the insurer of that objection, but the worker must comply with the communication requirements of ORS 656.262(6)(d) and ORS 656.267(1), as discussed below. ORS 656.262(6)(d). Similarly, if, in light of an initial acceptance, a worker believes that the insurer should consider a new medical condition, the worker may request that the insurer accept the new medical condition claim, but again must comply with the communication requirements of ORS 656.267(1) (requiring worker to "clearly request formal written acceptance"). In either case, an insurer then has 60 days to provide the worker with written notice of acceptance or denial of the new or omitted medical condition claim. ORS 656.262(7)(a).

2.  *Can new medical condition claims precede initial claim acceptance?*

Despite the parties' agreement as to those *post*-acceptance proceedings, they diverge on the question raised in claimant's first assignment of error; that is, whether, *before* having received an acceptance of his or her initial claim, a worker may file a new medical condition claim, thereby triggering the insurer's duty under ORS 656.262(6)(a) to respond within 60 days. With the issue so framed, we turn to the specifics of each party's argument.

In claimant's view, his first assignment of error presents a straightforward issue of statutory interpretation under *State v. Gaines*, 346 Or 160, 171-72 206 P3d 1042 (2009) (evaluating statutory text in context, considering any helpful legislative history, and turning to canons of construction when necessary). And, claimant contends, we really need look no further than the plain text of the statute to resolve the matter. Claimant focuses on the "notwithstanding" clause of ORS 656.267(1), which states that "*[n]otwithstanding any other provision of this chapter*, the worker may initiate a new medical or omitted condition

claim *at any time*." (Emphases added.) Given the plain meaning of "at any time," and viewing that phrase in light of the immediately preceding "notwithstanding" clause, claimant reasons that there was no lawful basis for SAIF to disregard his new medical condition claim until after it had accepted his initial claim. Furthermore, claimant argues, placing such a temporal restriction on his right to initiate a new medical condition claim would run afoul of ORS 174.010, which prohibits us, when construing a statute, from inserting language that the legislature has omitted.[10]

Claimant adds that, even if we do not agree that a plain reading of the statutory text is dispositive, the statutory context and legislative history of ORS 656.267(1) further support his interpretation of that statute. For statutory context, claimant points to ORS 656.262. Claimant acknowledges that ORS 656.262(6)(d) and (7)(a) only expressly address *post*-acceptance processing of new and omitted medical condition claims. *See* ORS 656.262(6)(d) (imposing notice requirements on a claimant "who believes that a condition has been incorrectly omitted from a notice of acceptance"); ORS 656.262(7)(a) (requiring that, "[a]fter claim acceptance," insurers provide written notice of acceptance or denial of "new medical or omitted condition claims"); *see also Johansen v. SAIF*, 158 Or App 672, 679, 976 P2d 84, *adh'd to on recons*, 160 Or App 579, 987 P2d 524, *rev den*, 329 Or 527 (1999) (stating that new medical condition claims arise after initial claim acceptance). He notes, however, that neither of those provisions expressly *prohibits* a worker from initiating a new medical condition claim before an initial claim has been accepted. Further, because ORS 656.267(1) explicitly states that, "[n]otwithstanding any other provision" of ORS chapter 656, a "worker may initiate a new medical *** condition claim at any time," claimant believes that provision can be read in conjunction with ORS 656.262 as expressly *permitting* claimants to submit new medical condition claims prior to initial claim acceptance. For further contextual support, claimant points to ORS 656.267(2)(a) and

_____

[10] ORS 174.010 provides, "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"

reasons that, by distinguishing, in that paragraph, between claims for "new medical conditions" and claims for "omitted medical conditions"—with only the latter being described as "related to an initially accepted claim"—the legislature signaled its intent to allow new medical conditions claims to move forward without regard to whether an initial claim has first been accepted.

With respect to legislative history, claimant relies on our discussion of ORS 656.267 in *Nacoste v. Halton Co.*, 275 Or App 600, 365 P3d 1098 (2015). In that case, we observed that "the legislative history shows that the legislature intended ORS 656.267 to embody" our decision in *Johansen*. *Nacoste*, 275 Or App at 606. Emphasizing that cross-reference in *Nacoste*, claimant notes that, in *Johansen*, we held that new medical condition claims could be initiated at any time and were subject to the same requirements as initial claims. *See Johansen*, 158 Or App at 681. Claimant also observes that, in discussing the legislative history of ORS 656.267 in *Nacoste*, we quoted legislative counsel Charlie Cheek, who had testified as follows:

> "Section 10 [enacted as ORS 656.267] clearly addresses the *Johansen* case, which established essentially that new medical conditions that arose related to an initial compensable injury, but were not part of that initial compensable claim—conditions that there was no way to identify at the time the claim arose—had to be processed as new claims. And what section 10 does is provide a process by which those conditions are processed just like any other claim. It establishes the criteria for doing that. So, it does address the holding in the *Johansen* case squarely."

*Nacoste*, 275 Or App at 605-06 (brackets in *Nacoste*; internal quotation marks omitted). Thus, claimant reasons, that legislative history—which we relied upon in *Nacoste*—forecloses any interpretation of ORS 656.267 that would allow SAIF to treat a new medical condition claim differently than an initial claim, such as by responding to it on a different schedule, as SAIF did in his case. Claimant concludes that, because his situation is indistinguishable from the scenario Cheek contemplated in his legislative testimony, his claim "should be processed just like any other claim" and, therefore, be subject to the 60-day deadline imposed by ORS 656.262(6)(a).

In response, SAIF argues that the board properly concluded that claimant's June 29 claim had been premature. According to SAIF, "[a] worker's request for acceptance of a new or omitted medical condition, prior to the initial claim acceptance, is invalid." SAIF agrees that our analysis is controlled by *Gaines*, but it rejects claimant's contextual analysis. SAIF contends that, when ORS 656.267(1) is properly viewed in context, and particularly in light of ORS 656.267(2)(a), it becomes evident that new medical condition claims are governed by ORS 656.262(7)(a) (imposing duties on insurers "[a]fter claim acceptance"), rather than ORS 656.262(6)(a) (requiring insurers to accept or deny claims within 60 days of receiving notice), as claimant suggests.

SAIF points out that ORS 656.267(2)(a) specifies that "[c]laims properly initiated for new medical conditions and omitted medical conditions *related to an initially accepted claim*" are to be "processed pursuant to ORS 656.262." (Emphasis added.) SAIF reasons that the wording of ORS 656.267(2)(a) reflects the legislature's understanding that, although new medical condition claims are *related* to initial claims, they are nonetheless distinct.[11] And, emphasizing the introductory clause of ORS 656.262(7)(a)—"[a]fter claim acceptance"—SAIF further reasons that, contrary to claimant's understanding, ORS 656.262(7)(a) effectively prohibits a worker from filing a new medical condition claim until after an initial claim has been accepted. With that understanding in mind, SAIF concludes that, "[u]nder the terms of this statute, if the request is not made after claim acceptance, then there is no requirement to process it."

SAIF further argues that the statutory context demonstrates that, in enacting ORS 656.267, the legislature retained the understanding of "new medical condition

---

[11] To support that conclusion, SAIF cites the legislative history of the 1995 bill that became ORS 656.262(6)(d) and ORS 656.262(7)(a). Primarily, SAIF relies on the testimony of Representative Kevin Mannix that a "new [medical] condition" is "something that didn't occur in your claim before" as evidence that a new medical condition must be new relative to a notice of acceptance. Tape Recording, House Committee on Labor, SB 369, Mar 6, 1995, Tape 46, Side A (statement of Rep Kevin Mannix). We further discuss that legislative history below.

claims" that we articulated in *Johansen*, with new medical condition claims being related to, but distinct from, initial claims. SAIF emphasizes that, in *Johansen*, we defined a "new medical condition" as follows: "A new medical condition (1) arises after acceptance of an initial claim, (2) is related to an initial claim, and (3) involves a condition other than the condition initially accepted." 158 Or App at 679. SAIF argues that the 2001 enactment of ORS 656.267 simply ensured that such claims would continue to be processed under ORS 656.262, with subsequent case law further specifying that they are to be processed under ORS 656.262(7)(a). *See Crawford v. SAIF*, 241 Or App 470, 481, 250 P3d 965 (2011) ("Under our interpretation of the statutes, claimant's omitted condition claim was made pursuant to both ORS 656.262(6)(d) *and* ORS 656.267 and triggered SAIF's obligation to respond under ORS 656.262(7)(a)." (Emphasis in original.)).

3.   *Analysis of ORS 656.267(1)*

We agree that the issue presented here hinges on statutory interpretation. We begin that analysis by considering, in context, the text of the relevant statutory provisions, with our ultimate objective being to discern the legislature's intended meaning. *See Polacek and Polacek*, 349 Or 278, 284, 243 P3d 1190 (2010) (the statutory text and context provide the "best evidence of the legislature's intent"); *Gaines*, 346 Or at 171 (text and context are "primary" and must be given "primary weight" in our analysis). "Furthermore, to the extent that it may be helpful, we will consider any available legislative history, and, if the intended meaning of a statute remains unclear, we may resort to 'general maxims of statutory construction.'" *State ex rel Hoyle v. City of Grants Pass*, 297 Or App 648, 654, 443 P3d 628 (2019) (quoting *Gaines*, 346 Or at 172).

For purposes of that inquiry, "'[s]tatutory context includes other provisions of the same statute and other related statutes, as well as the preexisting common law and the statutory framework within which the statute was enacted.'" *State v. Powell*, 209 Or App 255, 259, 147 P3d 933 (2006) (quoting *Fresk v. Kraemer*, 337 Or 513, 520-21, 99 P3d 282 (2004)). Also—and of particular significance here—we

presume that, at the time of any amendments to the statute, the legislature was aware of our decisional law construing the statute. *Powell*, 209 Or App at 259; *see also Weber and Weber,* 337 Or 55, 67, 91 P3d 706 (2004) ("[T]his court presumes that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing upon those statutes.").

    a.   The meaning of "new medical condition" and "at any time"

As noted, the focus of the parties' statutory dispute is ORS 656.267(1), which provides, in part, that "[n]otwithstanding any other provision of this chapter, the worker may initiate a new medical or omitted condition claim *at any time*." (Emphasis added.) And, in light of the board's conclusion that SAIF properly disregarded claimant's attempt to file a new medical condition claim before SAIF had accepted his initial claim, we understand the primary interpretive question before us to be this: whether, by permitting a worker to initiate a new medical condition claim "at any time," the legislature intended to allow a worker to trigger an insurer's duty, under ORS 656.262(6)(a), to accept or deny such a claim, regardless of whether the insurer had first accepted the worker's initial claim.

Although the phrase "at any time" is central to the parties' dispute about ORS 656.267(1)'s intended meaning, we focus initially on a different term—"new medical *** condition claim"—which appears in both ORS 656.267(1) and ORS 656.262(7). As discussed above, the board's basis for concluding that SAIF was not required to accept or deny claimant's June 29, 2015, form 827 request was that "claimant's 'pre-acceptance' request for acceptance of a medial femoral chondral defect did not constitute a new/omitted medical condition claim for that condition." In other words, if claimant's pre-acceptance submission was not a "new medical condition claim" within the meaning of those statutory subsections, it cannot have triggered SAIF's obligation under them to provide claimant a timely response. Accordingly, we begin by considering the meaning of that term.

We find considerable guidance regarding the meaning of "new medical condition" in our case law, which both provides important context for ORS 656.267(1) and sets out the legislative history of that subsection. As both parties observe, our decision in *Johansen* predated and led to the enactment of ORS 656.267 in 2001. *Nacoste*, 275 Or App at 605 ("[T]he legislature enacted ORS 656.267 in direct response to *Johansen*."). In *Johansen*, we construed ORS 656.262(7)(a) (1999), *amended by* Oregon Laws 2001, chapter 865, section 7 which, at the time, provided, in part:

> "After claim acceptance, written notice of acceptance or denial of claims for aggravation or new medical conditions shall be furnished to the claimant by the insurer or self-insured employer within 90 days after the insurer or self-insured employer receives written notice of such claims. *New medical condition claims must clearly request formal written acceptance of the condition and are not made by the receipt of a medical claim billing for the provision of, or requesting permission to provide, medical treatment for the new condition. \*\*\* Notwithstanding any other provision of this chapter, the worker may initiate a new medical condition claim at any time.*"

(Emphasis added.) The language emphasized above has since been removed from ORS 656.262(7)(a) and now appears in virtually identical form in ORS 656.267(1). Or Laws 2001, ch 865, § 10.

At issue in *Johansen* was whether the claimant, whose compensable back injury SAIF had accepted, was entitled to temporary total disability (TTD) for an additional, accepted, herniated-disc claim, which SAIF maintained had been accepted "as a part of the original nondisabling injury." 158 Or App at 674. Ruling for SAIF, the board concluded that the added herniated-disc claim was an untimely request to reclassify a claim from nondisabling to disabling, and that the claimant's documentation was insufficient to support an aggravation claim. *Id*. at 675. The claimant sought judicial review of that ruling, arguing that his attorney's letter requesting coverage for the herniated disc "was not an attempt to reclassify the original claim, but was instead a claim for a 'new medical condition,' pursuant to ORS 656.262(7)(a)." *Id*. at 676 (describing position

of dissenting members of board, which the claimant had adopted).

On judicial review, we agreed with the claimant. *Id*. at 679-81. In so doing, we recognized that the workers' compensation law did not separately define claims for new medical conditions and proceeded to explain the operation of ORS 656.262(7)(a) (1999). *Id*. at 678-79. After discussing paragraph (6)(d), relating to conditions incorrectly omitted from the notice of acceptance, we explained that paragraph "(7)(a) then sets forth procedures that apply after an initial claim has been accepted." *Id*. at 678. We then noted:

> "The first phrase of [that paragraph], 'after claim acceptance,' indicates generally that new medical condition claims *arise after acceptance* of an initial claim. *Beyond that*, the statute provides that a new medical condition claim may be filed at any time, '[n]otwithstanding any other provision of' ORS chapter 656. Thus, the new medical condition claim may be filed *after* claim acceptance and *before or after* claim closure of the initial claim, without any *other* time limitation."

*Id*. at 679 (second brackets in *Johansen*, emphases added).

Ultimately, in *Johansen*, we concluded that, under ORS 656.262(7)(a) (1999), SAIF was required to process a properly filed new medical condition claim under the "processing requirements for claims generally," including those provided in ORS 656.262. *Id*. at 680-81 (stating that, "[i]f, as SAIF asserts, the legislature intended that there be no independent processing obligation for a new medical condition claim, then it was incumbent on the legislature to so provide"). And, because the added claim otherwise satisfied our identified criteria for a new medical condition claim—*i.e.*, it arose after acceptance of an initial claim, related to an initial claim, and involved a condition other than the condition initially accepted—and it met the filing requirements of ORS 656.262(7)(a) (1999), the claimant was entitled to TTD. *Id*. at 680-81. In reaching that conclusion, however, we emphasized that, even though a new medical condition claim "relates to an initially accepted claim," *id*. at 679, it is nonetheless "distinct from an initial claim," *id*. at 680.

Although our decision in *Johansen* construed the term "new medical condition claim" in ORS 656.262(7)(a) (1999) rather than ORS 656.267(1), it provides critical context for our analysis. Because the language that the legislature removed from ORS 656.262(7)(a) now appears almost verbatim in ORS 656.267(1), it is evident that the statutory language that we construed in *Johansen* is an earlier version of the statute at issue here; accordingly, we consider that decision at the first level of our *Gaines* analysis. *See State v. McNally*, 361 Or 314, 325, 392 P3d 721 (2017) ("Context includes both related statutes and earlier versions of the statute at issue."); *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 35, 147 P3d 1154 (2006) (previous judicial interpretations of related statutes provide "relevant context" when construing a statute); *see also Powell*, 209 Or App at 259 (presuming that, at the time legislature amended statute, it was aware of our decisional law construing the statute).

Indeed, because there is clear evidence here that the legislature that enacted ORS 656.267(1) specifically contemplated our *Johansen* decision, it arguably can be viewed as having adopted our definition of "new medical condition" from that case. *See State v. Guzman/Heckler*, 366 Or 18, 29, 455 P3d 485 (2019) (although legislature typically is presumed only to have adopted decisions of the state's court of last resort, *i.e.*, the Supreme Court, Court of Appeals decisions may be given that effect under those circumstances). And here, the legislature not only expressly considered our decision in *Johansen* when it enacted ORS 656.267(1), it actually sought to "embody" that decision. *Nacoste*, 275 Or App at 606 (observing that "the legislative history shows that the legislature intended ORS 656.267 to embody" our decision in *Johansen*).

Given that statutory history of ORS 656.267(1), including our construction of the statute that was the source of its text, there appears to be substantial support for the board's conclusion that claimant's attempted pre-acceptance submission of a new medical condition claim did not require a response from SAIF. That is, because we defined a "new medical condition claim" in *Johansen* as a claim that, among

other things, "arises after acceptance of an initial claim," 158 Or App at 679, claimant's submission of the 827 form arguably was *not* a new medical condition claim within the meaning of ORS 656.267(1), despite the form's language to that effect.

Moreover, we find additional contextual support for SAIF's interpretation of ORS 656.267(1) in its immediate statutory surroundings. Again, ORS 656.267 provides, in part:

> "(1)   *To initiate* omitted medical claims under ORS 656.262(6)(d) or *new medical condition claims* under this section, the worker must clearly request formal written acceptance of a new medical condition or an omitted medical condition from the insurer or self-insured employer. *** Notwithstanding any other provision of this chapter, the worker may initiate a new medical or omitted condition claim at any time.

> "(2)(a)   Claims *properly initiated* for new medical conditions and omitted medical conditions *related to an initially accepted claim* shall be processed pursuant to ORS 656.262."

(Emphases added.) Reading those two statutory provisions together, it appears that subsection (1) sets out the requirements for workers who want to initiate new medical condition claims, and, in turn, paragraph (2)(a) requires insurers to process, under ORS 656.262, claims properly initiated under subsection (1). Subsection (1) imposes no processing requirements of its own, and, without paragraph (2)(a), there would be no express processing mechanism for new medical condition claims. Furthermore, as SAIF emphasizes, paragraph (2)(a) provides only for the processing of new medical conditions "related to an initially accepted claim."[12]

---

[12] In support of an argument that the phrase "related to an initially accepted claim" in ORS 656.267(2)(a) applies only to *omitted* medical conditions and not *new* medical conditions, and therefore does not condition new medical condition claims on there being a previously accepted claim, claimant implicitly invokes the "doctrine of the last antecedent." *See Price v. Lotlikar*, 285 Or App 692, 702, 397 P3d 54 (2017) ("Under the doctrine of the last antecedent, referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent." (Internal quotation marks and brackets omitted.)). We reject that argument without discussion, except to note that we disagree with claimant's implicit reliance on that doctrine here.

Given the respective roles that ORS 656.267(1) and ORS 656.267(2)(a) play in the claims process, it follows that, in allowing workers to initiate new medical condition claims "at any time" under subsection (1), the legislature most likely contemplated claims "related to an initially accepted claim," as paragraph (2)(a) provides. Further, we reject claimant's argument that, by limiting new medical condition claims to claims submitted following initial claim acceptance, we would be disregarding the plain meaning of "at any time" and adding terms to ORS 656.267(1) in violation of ORS 174.010. Claimant's argument is premised on the legislature having meant "at any time" in a literal sense, while the balance of the statutory claims process strongly suggests otherwise. Most notably, the phrase "at any time" also appears in ORS 656.262(6)(d), which was adopted at the same time as the text in ORS 656.262(7)(a) (1999), the source of ORS 656.267(1)'s text. *See* Or Laws 1995, ch 332, § 28. As used in ORS 656.262(6)(d), which applies to omitted condition claims, the phrase "at any time" cannot be given its literal meaning. An omitted condition claim challenges an insurer's notice of acceptance; necessarily, therefore, such a claim can be filed only *after* the acceptance of an initial claim, and not literally "at any time," as claimant's argument would suggest.

Turning, finally, to the legislative history of the term "new medical condition," we find further support for the board's interpretation of that term. We have already recounted much of that history in our discussion of the text and context of ORS 656.267(1). For additional guidance, however, we turn to the legislative history of ORS 656.262(7), which, as we have explained, is the source of the term "new medical condition" that now appears in ORS 656.267.

The legislature enacted ORS 656.262(7) as part of SB 369 in 1995, when it first introduced the concept of a new medical condition claim. Or Laws 1995, ch 332, § 28. As noted above, that version of ORS 656.262(7)(a), which remained in effect at the time we decided *Johansen*, provided: "*After claim acceptance*, written notice of acceptance or denial of claims for aggravation or new medical condition shall be furnished to the claimant[.] \*\*\* *Notwithstanding any other provision of this chapter, the worker may initiate a new medical condition claim at any time.*" ORS 656.262(7)(a)

(1999), *amended by* Or Laws 2001, ch 865, § 7 (emphases added). During legislative proceedings regarding SB 369, Representative Mannix explained the purpose of a new medical condition claim:

> "[ORS 656.262(7)] establishes a procedure for consideration of new conditions. Now, it is important to point out that you can bring in aggravation claims, you may have ongoing conditions, what if you think that you have a *new condition that was not covered at the time of acceptance*? Well, we need a procedure for that. This sets it up and it allows the worker to present that new condition for processing by the insurer."

Tape Recording, Senate and Labor and Government Operations Committee meeting jointly with House Labor Committee, SB 369, Jan 30, 1995, Tape 15, Side B (statement of Rep Kevin Mannix) (emphasis added).

As our above discussion of *Johansen* suggests, 304 Or App at 136-37, our understanding of ORS 656.262(7)(a) at the time closely tracked Mannix's view. Specifically, Mannix indicated that new medical condition claims were distinct from existing (or "ongoing") claims and aggravation claims, each of which the law already addressed. Tape Recording, Senate and Labor and Government Operations Committee meeting jointly with House Labor Committee, SB 369, Jan 30, 1995, Tape 15, Side B (statement of Rep Kevin Mannix). The purpose of the new statute, he explained, was to establish a procedure to present the insurer with "a new condition that was not covered at the time of acceptance." *Id.* Consistent with that view, we concluded that "new medical condition claims arise after acceptance of an initial claim." *Johansen*, 158 Or App at 679. "Beyond that, the statute provides that a new medical condition claim may be filed *at any time*[.]" *Id.* (emphasis added).

> b. New medical condition claims must follow acceptance.

As that legislative history reflects, a "new medical condition" claim, although distinct from a worker's initial or "ongoing" claim, has always been understood to relate to an initial claim that the insurer has accepted; it is "a new condition that was not covered at the time of acceptance."

*See id*. (stating that the "notwithstanding" clause of ORS 656.262(7)(a) means that there can be no time limitation on new medical condition claims *other* than that they can only be submitted after initial claim acceptance). Further, in light of that history of its predecessor—together with our assessment of the text in context—we are persuaded that the legislature did not alter that understanding of how new medical condition claims are processed when it adopted ORS 656.267(1). Rather, as SAIF suggests, the more reasonable conclusion is that the legislature moved the text that became ORS 656.267(1) to clarify—as we held in *Johansen*— that new medical condition claims, *when properly initiated*, are to be processed "just like any other claim," not subject to the requirements for proving aggravation claims or the time limitations applicable to claim reclassification. *See Johansen*, 158 Or App at 681; *see also Evangelical Lutheran Good Samaritan Soc. v. Bonham*, 176 Or App 490, 496, 32 P3d 899 (2001), *rev den*, 334 Or 75 (2002) (noting that "new medical condition," while not statutorily defined, had a meaning that was "well established within [the] context of workers' compensation claims" at the time).[13] Accordingly, a new medical condition claim under ORS 656.267(1) cannot precede initial claim acceptance, and the board did not err in concluding that SAIF was not required to respond to claimant's pre-acceptance submission of an 827 form.

B.   *Sufficiency of Claimant's Purported Omitted Condition Claims*

     Having concluded that the board did not err in the manner asserted in claimant's first assignment of error, we turn to his remaining arguments. Both claimant's second and third assignments assert that SAIF unlawfully failed to timely process *post*-acceptance omitted medical condition claims. We address each assignment in turn.

    1.   *Claimant's letter to the ALJ hearing his new medical condition case*

     In his second assignment of error, claimant argues that the board erred in concluding that his January 29, 2016

---

[13] We note that our conclusion that an insurer is not *required* to process a pre-acceptance new medical condition claim does not preclude an insurer from voluntarily accepting an otherwise premature new medical condition claim.

letter to the ALJ did not constitute a clear request for formal written acceptance, as required by ORS 656.267(1) (requiring claimant to request written acceptance to initiate an omitted medical condition claim under ORS 656.262(6)(d)). In claimant's view, by referencing his earlier 827 form, which itself met the communication requirements of ORS 656.267(1), his letter also satisfied those requirements. Although SAIF does not dispute that claimant's 827 form satisfied ORS 656.267(1), it argues that the board was nonetheless correct in concluding that claimant's January 29 letter, was insufficient because it "was not addressed to SAIF" and it did not itself "clearly request acceptance of a condition." We agree with SAIF.

In its entirety, claimant's letter to the ALJ stated:

"Dear Judge Marshall,

"Please accept this letter to raise the issue of the de facto denial of [claimant's] medial femoral chrondral [*sic*] defect.

"As you may recall at hearing, SAIF objected to the jurisdiction of the Hearings Division, alleging that the request for a new or omitted condition by the way of an 827 form dated June 29, 2015 *** was premature in that it predated the actual claim acceptance.

"This request for hearing challenges SAIF's failure to accept the condition, known to SAIF at the time it did accept [a] knee contusion.

"Claimant also requests attorney's fees and costs should claimant prevail on this denial.

"Thank you for considering this matter."

As SAIF points out, claimant's letter is neither directed to SAIF nor a request for written acceptance of a claim. To require a response from SAIF, claimant's communication was required to be both of those things. First, under ORS 656.262(6)(d), "[a]n injured worker who believes that a condition has been incorrectly omitted from a notice of acceptance *** first must communicate in writing *to the insurer* *** the worker's objections to the notice pursuant to ORS 656.267." (Emphasis added.) Claimant's letter, on the other hand, did not communicate his objection "to the insurer"; at best, it communicated that objection to the ALJ.

Second, and perhaps more significantly, under ORS 656.267(1), the worker must "clearly request formal written acceptance of *** [the] omitted medical condition from the insurer." Again claimant's letter falls short. Even if, notwithstanding our previous conclusion, the letter could be viewed as being directed to SAIF, it does not ask *SAIF* to do anything. *See Webster's Third New Int'l Dictionary* 1929 (unabridged ed 2002) (defining "request" as, among other things, "the act of asking for something"). Rather, the only request in the letter is addressed to the ALJ, and it asks, "[p]lease accept this letter to raise the issue of the de facto denial of [claimant's] medial femoral [chondral] defect." Thus, even though the letter references claimant's 827 form, it does not ask that SAIF *accept* the condition identified in that submission; it asks—by purporting to "raise the issue of the de facto denial" of that condition—that "SAIF's failure to accept [that] condition" be *penalized*.[14] Claimant's only argument to the contrary is a bare assertion that the words that he used in his letter—"challenges SAIF's failure to accept the condition"—are the functional equivalent of the words "request[s] formal written acceptance." We do not agree that those statements are effectively the same. Accordingly, the board did not err in concluding that claimant's January 29, 2016, letter to the ALJ failed to satisfy the communication requirements of ORS 656.262(6)(d) and ORS 656.267(1).

2. *Claimant's medical chart note*

Turning to claimant's last assignment of error, he argues that the board erred in concluding that his physician's chart note was insufficient to initiate an omitted medical condition claim. In reasoning that "the statutes do not provide for a physician to file a new or omitted medical condition claim on behalf of the worker," the board relied on an earlier board decision, *Andria D. Costello*, 55 Van Natta 498 (2003), *aff'd without opinion*, *Costello v. Unity, Inc.*, 193 Or App 484, 94 P3d 845 (2004), and the text of ORS 656.267(1), which, as we have noted, requires "the *worker*" to "clearly request formal written acceptance" of a condition. (Emphasis added.) Challenging that rationale, claimant

---

[14] *See* ORS 656.262(11)(a) (authorizing statutory penalties and attorney fees when an insurer "unreasonably delays acceptance or denial of a claim").

notes that ORS 656.005(6) specifically defines "claim" as a "written request for compensation from a subject worker or *someone on the worker's behalf*." (Emphasis added.) Claimant also points out that we have previously held that, in light of ORS 656.005(6), "a physician's report requesting medical treatment for a specified condition constitutes a claim." *Safeway Stores, Inc. v. Smith*, 117 Or App 224, 227, 843 P2d 1000 (1992). Similarly, in another decision relying on the same definition, we concluded that a physician's "submission of medical records and his billing constituted a workers' compensation claim" because "[a] claim is any written request for compensation tendered by the injured worker or by someone else on the workers' behalf." *Reynolds Metals v. Rogers*, 157 Or App 147, 151, 967 P2d 1251 (1998). Thus, claimant argues, it is immaterial that his omitted medical condition claim originated with his physician, rather than with claimant himself.

SAIF does not acknowledge *Safeway Stores, Inc.*, or *Reynolds Metals*. Rather, in defending the board's interpretation of ORS 656.267(1), SAIF focuses on another part of that statutory provision and contends that it "excludes from consideration communications made by medical providers." Specifically, SAIF emphasizes that, under ORS 656.267(1), "[a] claim for a new medical condition or an omitted medical condition *is not made* by the receipt of medical billings, nor by requests for authorization to provide medical services for the new or omitted medical condition, nor by actually providing such medical services." (Emphasis added.) However, for two reasons, SAIF's reliance on that language is misplaced.

First, contrary to SAIF's contention, the provisions of ORS 656.267(1) do not "make it clear" that a "physician may not make [a] claim for the worker." Indeed, the text that SAIF points to says nothing about *who* may initiate a claim. Rather, it merely establishes that some things—such as an insurer's receipt of medical billings or a request for authorization to provide treatment—are not themselves clear requests for acceptance within the meaning of the statute. *See* ORS 656.267(1).

Second, in 1995, when the legislature enacted the language that SAIF emphasizes—as well as the language

that the board relied on—we had already issued our decision in *Safeway Stores, Inc. See* Or Laws 1995, ch 332, § 28 (enacting, in part, ORS 656.262(7)(a)). True, in that case, our conclusion that a physician could initiate a claim on behalf of a worker was based on our interpretation of ORS 656.005(6), not ORS 656.262(7)(a) (1999), and a new or omitted condition claim was not at issue. *See Safeway Stores, Inc.*, 117 Or App at 226-27. Nonetheless, in light of that decision, we believe that, if the legislature had intended to preclude physicians from initiating claims on behalf of workers, it would have said as much. *Cf. Weber*, 337 Or at 67 (legislature is presumed to enact statutes in light of decisional law bearing on those statutes). That is particularly so because ORS 656.262(7)(a) (1999) specifically provided that *certain* communications from medical providers—billings or requests for permission to provide medical treatment—did not constitute requests for acceptance. We see no reason for the legislature to have included that specific provision if its intention was to prohibit physician-initiated claims altogether.

Given that case law and legislative history, we conclude that the board was mistaken in understanding that claimant's physician could not initiate an omitted condition claim on his behalf. That does not, however, mean that the board erred in concluding that his physician's chart note was inadequate for that purpose here. Like claimant's letter to the ALJ, the chart note was not a clear "request [for] formal written acceptance of * * * an omitted medical condition from the insurer." ORS 656.267(1). It stated: "The 827 [form] filed by me on 6/29/15 needs to be addressed [by the] insurance company." Although the record before the board shows that SAIF received a copy of the chart note, nothing suggests that the physician's observation was even directed at SAIF, much less that it was intended as a request for formal written acceptance. At most, the chart note was an oblique reminder to SAIF that claimant's purported *new* medical condition claim of June 29, 2015, remained outstanding. It cannot, however, reasonably be viewed as a "clear" request that SAIF formally accept an *omitted* condition claim. Accordingly, as a matter of law, the chart note did not satisfy the communication requirements of ORS 656.267(1),

and, ultimately, the board did not err in concluding that it was insufficient for that purpose.

### 3.  *Appropriate disposition under ORS 183.482*

Typically, when the board has erroneously interpreted a provision of law, as it did here in concluding that ORS 656.267(1) prohibited claimant's physician from filing a claim on his behalf, we will reverse and remand the board's order. *See* ORS 183.482(8)(a)(B) (where an "agency has erroneously interpreted a provision of law and *** a correct interpretation compels a particular action," one option is to "[r]emand the case to the agency for further action under a correct interpretation of the provision of law"); *see also Kuhn v. Dept. Human Services*, 283 Or App 695, 701, 389 P3d 1167 (2017) (remanding administrative order for reconsideration under a correct interpretation of law when the agency's error prohibited it from considering the "critical question" at issue). Here, however, even under a correct interpretation of the law, the board's conclusion that claimant's chart note did not initiate an omitted medical condition claim was legally correct, and a remand would serve no purpose. Accordingly, we affirm the board's order.

### III.   CONCLUSION

The board correctly concluded that claimant's preacceptance submission of an 827 form was not a new medical condition claim requiring acceptance or denial within 60 days. Further, the board correctly concluded that the references to the 827 form in claimant's chart note and in a letter to the ALJ were insufficient to initiate an omitted medical condition claim. Accordingly, the board did not err in any of the ways asserted by claimant, and, we, therefore, affirm.

Affirmed.